[No. 11077.   Department Two. — June 5, 1888.]

## WILLIAM BURRIS ET AL., RESPONDENTS, *v.* MARY A. FITCH ET AL., APPELLANTS.

BOUNDARIES — ACQUIESCENCE IN FENCE AS DIVISION LINE. — The acquiescence by an owner of land, manifested by silent assent or submission, with apparent consent, for a period of upwards of sixteen years, in the location of a fence as the dividing line between his land and that of the adjoining proprietor, operates to estop him from questioning the correctness of the location.

APPEAL from a judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion of the court.

*R. B. Tappan,* and *Van Duzer & Teare,* for Appellants.

The plaintiffs, having acquiesced in the fence as erected, are estopped from questioning the correctness of the location. (*Adams* v. *Rockwell,* 16 Wend. 285; *McCormick* v. *Barnum,* 10 Wend. 104; *Majors* v. *Rice,* 57 Mo. 385; *Columbet* v. *Pacheco,* 48 Cal. 395; *Jackson* v. *Ogden,* 7 Johns. 238; *Jackson* v. *Freer,* 17 Johns. 29; *Dibble* v. *Rogers,* 13 Wend. 536; *Van Wyck* v. *Wright,* 18 Wend. 157; *Boyd's Lessees* v. *Graves,* 4 Wheat. 513; see Code Civ. Proc., sec. 1962, subd. 3; *Thomas* v. *Pullis,* 56 Mo. 211; *Reed* v. *Farr,* 35 N. Y. 113; *Brown* v. *Baldwin,* 16 N. Y. 359.)

*George Pearce,* for Respondents.

SHARPSTEIN, J.— This appeal is from a judgment recovered by the plaintiffs against the defendants in an action of ejectment. The contention of appellants is, that the findings of fact do not justify the conclusions of law or the judgment. The controversy is as to the boundary line between two tracts of land, one of which is owned by plaintiffs and the other by defendants. The plaintiffs settled upon the tract claimed by them in the year 1851, and procured a conveyance of it in 1858. Defendants' grantors procured a conveyance of the tract claimed by them in 1851. Both conveyances are from the town or city of Sonoma. The lot conveyed to defendants' grantors is described as lot No. 554, which is bounded on the east by a line known as the Trancas line, an indeterminate line, run by O'Farrell and Hudspeth in 1847. Defendants' grantors, Lyon and Sneed, to whom said town or city of Sonoma conveyed said lot 554, inclosed with it a small strip of land east of said Trancas line, on which they had previously hauled a small dwelling-house. Between 1855 and 1858 Lyon built a small barn to the eastward of his dwelling, and east of the fence built by him and Sneed, and inclosed about half an acre, on which the barn stood. In January, 1868, one Stanley purchased said lot No. 554, and built a fence on the easterly line of the demanded premises, and occupied said premises from the date of his purchase until 1873, but never claimed eastward beyond the Trancas line. Stanley built the fence at his own expense, without saying anything to the plaintiffs on the subject. After completing the fence, he requested plaintiffs to convey to him (Stanley) the demanded premises, which they refused to do. In 1873 Stanley, when about to sell lot No. 554 to one Yates, pointed out to Yates the situation as he (Stanley) understood it, but told Yates that he (Stanley) did not know where the true east line of lot No. 554 was; but he supposed from what he had been told that it ran between the dwelling-house and the

barn; that none of the deeds of conveyance to the defendants or their grantors purport on their face to convey any land except lot No. 554. In 1860 plaintiffs filed a declaration of homestead covering the entire tract conveyed to them by the city or town of Sonoma. The following findings are copied literally from the transcript: "9. That valuable permanent improvements were put on the strip of land in controversy after the division fence was built, in 1868, consisting of an addition to the dwelling-house (which was made after the issue of the United States patent for said pueblo lands), the planting of fruit-trees, grape-vines, and the building of outhouses. 10. That said Lyon tract, lot No. 554, has been owned, possessed, and occupied by five or six different persons since the construction of the division fence built by Stanley, and the land in dispute has been occupied by said claimants and owners of lot No. 554. 11. That neither of said plaintiffs ever made any objections to the construction or continuance of said fence built by Stanley, and never claimed or intimated to any one of the numerous successive owners and occupants, except J. J. and A. G. Lyon, and also except Stanley when he held the land, that they or either of them, had any claim or right to any part of the land embraced in said Lyon tract as inclosed, until about the 1st of January, 1884, and after the said defendant Mary A. Fitch had become the purchaser thereof. 12. That plaintiffs frequently visited the Lyon tract during a period of sixteen or eighteen years before the commencement of this action, and witnessed the progress of the improvements that were made,—the addition to the dwelling-house, the planting of grape-vines and fruit-trees in and upon the strip of land in controversy; and permitted said improvements to be made without objection. 13. That the defendant Mary A. Fitch purchased said premises as inclosed in good faith, and without any actual knowledge of any claim of the plaintiffs to any part of said tract of land in contro-

versy. 14. That a portion of the present dwelling-house on the tract of land in controversy was built more than thirty years before the commencement of this action, and that a barn has been on said land for a like period." The salient facts found are, that in 1868 the owners of lot No. 554 constructed a fence which inclosed the demanded premises with said lot, and that said owners of said lot 554 occupied, cultivated, and improved said demanded premises, as a part of said lot, for a period of sixteen or eighteen years, with the knowledge of the plaintiffs, who made no objection to such occupancy, cultivation, and improvement of said demanded premises up to the time of bringing this action.

We think this shows an acquiescence by plaintiffs, for a period of at least sixteen years, in the location of that fence as the division line between the lots of the plaintiffs and the defendants. There was a silent assent or submission, with apparent consent, as distinguished from avowed consent and from opposition or discontent. In *Columbet* v. *Pacheco*, 48 Cal. 395, it was laid down that acquiescence in the location of a fence as a dividing line between two lots for a period of sixteen years estopped the defendants from controverting the correctness of the location. In *Sneed* v. *Osborn*, 25 Cal. 619, the court said: "The authorities are abundant to the point that when the owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls in their deeds, they are thereafter precluded from saying it is not the true line. The better opinion is, that the considerable time mentioned in the cases must at least equal the length of time prescribed by the statute of limitations to bar a right of entry." We have nowhere seen the doctrine of all the cases more clearly stated than it was by Senator Maison in the late court for the correction of errors of the state of New York. He said: "To deprive a man of his abso-

lute right to the unquestioned fee of his land, according to the doctrine of the courts, regardless of or according to the construction which they have given to the statute for the prevention of frauds and perjuries, it should appear most clear and distinct, without the shadow of a doubt, and by testimony the most convincing and satisfactory, that there was an express agreement made between the owners of the adjoining lands deliberately settling the exact precise line or boundary or location between them, and an acquiescence therein for a considerable length of time; or, in the absence of proof of such agreement, it should be as clearly, distinctly, and satisfactorily shown that the party claiming has had possession of the lands claimed up to a certain visible, known line, with the express knowledge and assent of the owner of the adjoining land, and his acquiescence in such possession, adverse to and in defiance of his right; and this for a considerable time." (*Adams* v. *Rockwell*, 16 Wend. 285.) The findings here are of the probative rather than of the ultimate facts. In that respect they are unsatisfactory; and while they manifestly do not justify the judgment, we are not satisfied that they would justify a judgment for the defendants. Instead, therefore, of reversing the judgment, and directing that one be entered for the defendants, we have concluded to reverse the judgment and order a new trial. In this way we think a more satisfactory result may be reached. Judgment reversed and cause remanded for a new trial.

THORNTON, J., and McFARLAND, J., concurred.