## DEIDRICH *v.* SIMMONS.

### Opinion delivered May 13, 1905.

1. EQUITY JURISDICTION—WHO MAY OBJECT.—One who moves to transfer a law case to the equity court cannot thereafter object that the latter court assumed jurisdicction. (Page 404.)

2. SAME—DISPUTED BOUNDARIES.—Courts of equity will not interpose to settle boundaries unless, in addition to the confusion and dispute over the boundaries, some other peculiar equities are shown. (Page 404.)

3. BOUNDARIES—ESTOPPEL.—Where all the sales and conveyances of two adjoining lots were made with reference to published maps showing that one of the lots was only 154 feet deep, and not to the plat filed in the recorder's office, and the purchasers of the two lots established their boundaries accordingly and made valuable improvements on that basis, and for thirteen years no one ever disputed or questioned the correctness of the established line, equity will decree the established boundary line to be binding. (Page 405.)

Appeal from Jefferson Chancery Court.

JOHN M. ELLIOTT, Chancellor.

Reversed.

STATEMENT BY THE COURT.

Appellants and appellee are the respective owners of two coterminous lots in the city of Pine Bluff, appellants of lot number one, and appellee of lot number four, of block number seventy-four of Tannehill & Owen's Addition to said city. Lot number one lies immediately north of lot four, and a strip eighty-seven feet wide on the border line claimed by both parties to be within their respective boundaries is the subject of this controversy. They claim title from a common source, Jas. M. Hudson, who owned the whole of block seventy-four, and on March 7, 1888, conveyed lot four to Malinda E. Kilpatrick, through whom appellee claims title, and on November 14, 1888, conveyed lot one to Silas C. Reynolds, through whom appellants claim title. It is shown that, about the time of the platting of the Tannehill & Owen's Addition, two maps of the city of Pine Bluff, including that addition, were published by surveyors and abstracters of recognized competency, and these maps were generally recognized as correct, and were used as guides in the conveyance of property in the city. According to these maps, lot number 4 of block 74 was 154 feet deep from north to south. One of these maps (White's) shows an alley 12 feet wide running through block 74 between lots 1 and 4; but the other map (Wilson's) does not show any alley, and according to this map the line of lot 1 comes down to lot four, and includes the 12-foot strip shown as an alley on the White map. The official plat on file in the recorder's office does not show any alley. The deed from Hudson to Mrs. Kilpatrick described the property conveyed by lot and block numbers as "being 120 x 154 feet." Mrs. Kilpatrick took possession under her purchase from Hudson, and fenced the lot according to the dimensions named, 120 x 154 feet, and remained in possession until she conveyed to D. Westal July 24, 1894. D. Westal conveyed to W. D. Westal on January 22, 1895, who in turn conveyed to appellee, J. B. Simmons, October 12, 1897. Neither of the Westals nor Mrs. Kilpatrick ever claimed any land except that which had been inclosed by Mrs. Kilpatrick, and at all times recognized and treated the fence as the true dividing line.

Silas C. Reynolds under his purchase of lot one from Hudson took possession, claiming to be the owner down to the division line established by Mrs. Kilpatrick, and inclosed the same

with a fence, using the fence built by Mrs. Kilpatrick on the north line of her lot as the dividing line between the two properties. He erected a substantial dwelling house, outhouses and other necessary buildings, on the strip of land in controversy, believing it to be a part of lot one, and occupied the same as his homestead until he conveyed the property to Manetta Reynolds on August 2, 1894, who, a short time afterwards, conveyed the same to J. W. Clegg, and the title by mesne conveyance passed on down to appellants. In all the conveyances from Hudson to Reynolds on down to appellants the property was described as lot 1 of block 74 and each vendee held possession of the strip in controversy claiming it as a part of lot number 1.

Mrs. Kilpatrick testified as follows: "Mr. Reynolds built his house just north of the fence I had built, and was living there when we moved away. I never claimed at any time the land north of the fence I built. Mr. Reynolds claimed and lived on the land just north of the fence; I never did claim or assert any right to the land that Reynolds fenced in. I saw Reynolds fencing in the land and building the house; we were living there at the time; I never at the time or afterwards claimed any part of the land that he fenced." She further testified that when she built the fence she supposed that there was an alley on the north side of her lot, and that she set her fence so as to leave this alley out, but Reynolds built his fence up to and adjoining her fence, which was thereafter used as a partition fence..

Appellee, Simmons, took possession of lot number 4 under his purchase from Westal in October, 1897. Sometime early in 1901 he caused the line of lot 4 to be surveyed by J. B. White, the city engineer, who gave to lot four the alley shown by the White map to be on the north side, and established the north line of lot 4, 12 feet north of the aforementioned division fence. Appellee moved this fence so as to take in the alley without objection from any one; lot number 1 being· at that time in possession of a receiver appointed by the United States Circuit Court in a suit therein pending. ·

·On July 15, 1901, one Evans, a tenant of appellants, removed from the dwelling house erected by Reynolds on the strip now

in controversy, and appellee, Simmons, immediately took possession, and asserted claim of title thereto as a part of lot 4.

Appellants thereupon commenced an action of ejectment against appellee for possession of the property, and subsequently filed an amended complaint, setting forth in substance the facts herein recited, and prayed that the boundaries between lots 1 and 4 be declared as established and recognized by all the previous owners since the conveyances from Hudson, and that the possession of lot 1, including the strip in controversy, be awarded to them. Upon appellants' motion, and over the objection of appellee, the case was transferred to the chancery court, where it was finally heard, and a decree rendered dismissing the complaint for want of equity, and quieting the title to the strip in controversy in appellee.

Appellee, in his answer, denied all the material allegations of the complaint, and alleged that the strip in controversy was a part of lot 4 owned by him. He also denied that the possession by appellants and those through whom they claimed title had ever been adverse to this strip of land.

J. J. Martin, a witness introduced by appellee, testified that he was a surveyor by profession, and that he surveyed and platted the Tannehill & Owen's Addition, and that the strip in controversy was, according to the plat on record in the office of the recorder, a part of lot 4, which lot he said was 221 feet deep. He further testified that the original plat did not give the dimensions of the lots in block number 74, but that they could be ascertained by reference to other lands and the line of adjacent lots. J. B. White, one of the makers and publishers of the plat of the city, was introduced as a witness by appellants, and testified that lot four was only 154 feet deep, as shown by his published map, which he said was correct.

*White & Altheimer,* for appellants.

Open, adverse, notorious and continuous possession is sufficient, without color of title. 30 Ark. 656; 33 Ark. 154; 60 Ark. 401; 59 Ark. 627; Buswell, Lim. & Adv. Pos. § 250. Simmons was estopped by his silence. 33 Ark. 465; 53 Ark. 196; 70 S. W. 469; 55 Ark. 296; 62 Ark. 319. Appellees were guilty of

laches. 42 Ark. 300; 55 Ark. 92; 23 Ark. 708; 19 Ark. 522; Sand. & H. Dig. § 4815; 19 Am. & Eng. Enc. Law, 239.

*Bridges & Wooldridge* and *Crawford & Gantt*, for appellees.

The conveyance carried all of lot four. 1 War. Vend. § 375; 2 Dev. Deeds, § 1020; 15 Ark. 297; 64 Ark. 240. Where one of two coterminous proprietors, by mistake, incloses land of another, intending to occupy only the land called for by his deed, his possession is not adverse. 82 S. W. 834; 59 Ark. 626; 35 S. W. 900; 12 S. W. 628; 54 Ia. 119; 15 Ark. 297. The doctrine of estoppel does not apply, there was only a mistake. Big. Estop. 552, 620; Bisph. Eq. 408; 53 Ark. 196; 56 Ark. 380. No lapse of time short of that prescribed by the statute will bar appellee's right. Kirby's Dig. § 5056; 46 Ark. 25; 47 Ark. 301; 67 Ark. 320. Successive trespassers cannot tack possession. Wood, Lim. § 271; Busw. Lim. & Adv. Pos. § 239; 1 Cyc. 1001. The statute of limitations does not run against a married woman, and runs against her vendee only from the date of his deed. 21 Ark. 539; 42 Ark. 357; 70 Ark. 371; 1 Cyc. 1113. There can be no claim for improvements without color of title. 47 Ark. 62, 528; 48 Ark. 183; 59 Ark. 114; 67 Ark. 184; 84 S. W. 224.

McCulloch. J., (after stating the facts.) · Appellee, by his objection to the transfer of the case to the chancery court, challenged the jurisdiction of that court, and that is the first question we are confronted with here, though it is not pressed in argument by other side. Appellee does not raise the question here, notwithstanding his objection below to the jurisdiction of the court, because he is the beneficiary of the final decree below, and is content therewith; and appellants cannot complain at the exercise of jurisdiction because it was of their own seeking. *Cribbs* v. *Walker*, 74 Ark. 104.

The establishment of disputed boundaries has been, from an early period of English jurisprudence, held to be a proper subject for the exercise of equity jurisdiction. It has been uniformly held, however, that the mere fact that boundaries are in dispute is not of itself sufficient to authorize the interference of equity; and that courts of equity will not interpose to ascertain and settle boundaries unless, in addition to the confusion and dispute over the boundaries, some other peculiar equities are shown. 1

Story, Eq. Jur. § § 690-623; 3 Pom. Eq. Jur. § § 1348, 1385; Tiedeman, Eq. Jur. § 525. Those peculiar equities are to be found in the facts of this case.

The testimony shows clearly that all the sales and conveyances of the two lots, numbered 1 and 4, though the plat on file in the recorder's office is referred to in the descriptive part of the deeds, were made in fact with reference to the dimensions and boundaries set forth in the published maps showing lot 4 to be only 154 feet deep. The purchasers from Jas. M. Hudson took possession of their resepective lots so purchased accordingly to those dimensions, and established their boundaries accordingly, made valuable improvements thereon, and no one ever disputed or questioned the correctness of the established lines for thirteen years, until appellee became the owner of lot 4, and asserted a claim to the strip of land in controversy. These facts are sufficient to call for the aid of a court of equity, in the nature of a reformation of the title deeds, to decree that to be within the boundaries described which the parties thereto intended should be included therein.

The proprietors of adjacent lands may by parol agreement establish an arbitrary division line, or an agreement may be inferred from long continued acquiescence and occupation according to such line, and they will be bound thereby. *Cox* v. *Daugherty, ante,* p. 395; *Jordan* v. *Deaton,* 23 Ark. 708; 5 Cyc. pp. 930, 935; *Pittsburg Iron Co.* v. *Lake Superior Iron Co.,* 118 Mich. 109; *Jones* v. *Pashby,* 67 Mich. 459; *Burris* v. *Fitch,* 76 Cal. 395; *Atchison* v. *Pease,* 96 Mo. 566; *Bloomington* v. *Bloomington Cem. Assn.,* 126 Ill. 221; *Clayton* v. *Feig,* 179 Ill. 534; *Edwards* v. *Smith,* 71 *Texas,* 156.

The testimony here unquestionably establishes the fact that the first purchaser from Hudson of these lots, Reynolds, and Mrs. Kilpatrick tacitly agreed upon the division line, and not only they but each subsequent purchaser acquiesced therein. It is undisputed that Mrs. Kilpatrick, after having first established the north boundary line of her property, stood by and without objection saw Reynolds, the purchaser of the adjoining lot, erect a dwelling house and other valuable improvements on the strip of land now claimed by appellee to be a part of lot four. She

and those claiming under her are now estopped from disputing the boundary thus settled and long acquiesced in.

In *Burris* v. *Fitch, supra,* the Supreme Court of California held that the acquiescence by a landowner, manifested by silent assent or submission, with apparent consent, for a long period, in the location of a fence as the dividing line between his land and that of the adjoining proprietor, operates to estop him from questioning the correctness of the location. The court there said: "We think this (referring to the testimony) shows an acquiescence by plaintiff, for a period of at least sixteen years, in the location of that fence as the division line between the lots of the plaintiff and the defendant. There was a silent assent or submission, with apparent consent, as distinguished from avowed consent and from opposition or discontent."

The decree of the chancellor is reversed, with directions to enter a decree in accordance with the prayer of the complaint.