[Civ. No. 3245. First Appellate District, Division One.—February 24, 1921.]

F. M. PHILLIPS et al., Appellants, v. MORTEN MORTENSEN et al., Respondents.

[1] BOUNDARY—DITCH AND FENCE—CONDUCT OF PARTIES—ESTOPPEL. In this action to determine the boundary line between the lands of the parties, the facts are such as to sustain the conclusion of the trial court that the acts and omissions of the parties and of their respective predecessors have been such as to preclude the plaintiff from now saying that the line marked by the fence and ditch between their lands is not the true boundary line.

[2] ID.—JUDGMENT—LACK OF CERTAINTY.—A judgment reciting that the true dividing line between coterminous owners is that located by their predecessors in title several years prior to the filing of the complaint and marked and located upon the ground by a ditch and fence, without any accurate reference as to where the fence and ditch are located, is too uncertain to serve any useful purpose.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Reversed.

The facts are stated in the opinion of the court.

Julius Hansen for Appellants.

W. D. Crichton for Respondents.

BARDIN, J., *pro tem.*—This action, brought to quiet title to a strip of land thirty feet in width, has for its real object the determination of the boundary line between certain lands severally owned by the plaintiffs and an adjacent tract owned by the defendants. The lands referred to are all in the same quarter-section in Fresno County. The appeal is from the judgment entered in favor of the defendants.

It is admitted that plaintiff Stratton owns the north half of the northeast quarter of the northwest quarter of the section, that Phillips owns the south half of the northeast quarter of the northwest quarter thereof, and that the defendants own the east half of the northwest quarter of the northwest quarter. The boundary line in controversy

marks the east boundary of the Mortensen property and the west boundary of the lands of Stratton and Phillips, respectively. It is alleged in plaintiffs' complaint that a line precisely described therein by courses and distances is the true location of the disputed line, which line had been surveyed and marked on the ground by monuments about one year before the present action was begun. The defendants, on the other hand, claim that the true boundary line between the lands referred to is a line located thirty feet east of the one claimed as correct by the plaintiffs. Defendants' claim as to the true location of said boundary line is apparently founded upon two theories, namely: (1) That the boundary line claimed as the true one by defendants had been determined and located by an express agreement of coterminous owners, and (2) that the plaintiffs, by reason of having acquiesced through a long period of time in the acts of the defendants and their predecessors, were each estopped from denying that the east boundary of the defendants' land extended to the line claimed as the correct one by the defendants.

It is true that these claims of the defendants were not set out with commendable clearness or precision in their answer, but a fair interpretation thereof leads us to the conclusion that these were the grounds upon which the defendants rested their case.

The trial court found, in effect, that the true boundary line was the line claimed as such by the defendants, and that it had been located and marked upon the ground by agreement of former grantors and predecessors in title of the respective parties to the action more than twenty-five years before the filing of the complaint.

It is unnecessary to discuss whether the essentials required to fix and determine the boundary line which it is claimed has been established by direct agreement ever existed, for the reason that the record is barren of any evidence, direct or indirect, showing that such an agreement had ever been actually entered into. . In fact, when, or in what manner, the purported boundary line claimed as correct by the defendants, came into existence does not appear from the record.

But the court found to the effect (and there was ample testimony adduced to sustain the finding), that for more

than twenty-five years before the action was brought the defendants and their predecessors in title, under the belief that it was their property, had occupied, farmed, and planted and maintained vineyards upon the disputed strip of land, up to the line claimed as correct by the defendants and marked during said period by an irrigating ditch and fence, and with the acquiescence of the plaintiffs and their predecessors in interest.

The defendants acquired title to their lands by gift deed from their father about two years before the filing of the complaint. The elder Mortensen purchased the property in 1902. Relying upon the purported east boundary as marked by a ditch and fence as correct and without any objection or hindrance, and at a considerable expense, he made excavations upon and leveled the strip of land in controversy, cultivated it continuously after acquiring title, and planted it to a vineyard now about ten years old. The predecessor in title of the older Mortensen had cultivated, or caused to be cultivated, the strip of land in controversy, under the supposition that it was a portion of the tract referred to as the Mortensen property, for several years before Mortensen acquired title. As early as 1887 a predecessor in title of the plaintiffs had considered the ditch and fence referred to as marking the west boundary of the plaintiff's lands. Succeeding grantees, other than the plaintiffs, likewise continuously acquiesced in the purported boundary line and in the adverse acts of the occupants of the Mortensen property, and when the plaintiffs both acquired title to their respective holdings in 1908, they, too, ostensibly accepted the disputed line as correct and continued to treat it as such for several years, acquiescing meanwhile, as their predecessors had done, in the hostile acts of the defendants and their predecessors and permitting them, without objection, to continue the intensive development and improvement of the disputed strip of land.

About two years before the complaint in this action was filed the plaintiffs caused their land to be surveyed, with the result that since that time plaintiffs have claimed the boundary line to be as described in their complaint. Some indefinite and vague question, however, had arisen between Mortensen senior and Phillips, two or three years—possibly more—before the survey was made, as to the correctness of

the purported boundary line, but it was not until the survey was made that the present claims of the plaintiffs became tangible and certain. The uncertainty as to the boundary line in dispute seems to have arisen because of some irregularity or shortage in the original government survey of the section.

[1] We believe the facts to be such as to warrant and sustain the conclusion of the trial court that the acts and the omissions of the parties and their respective predecessors have been such as to preclude the plaintiffs from now saying that the line marked by the fence and ditch referred to was not the true boundary line. (*Columbet* v. *Pacheco*, 48 Cal. 395; *Burris* v. *Fitch*, 76 Cal. 395, [18 Pac. 864]; *Sneed* v. *Osborn*, 25 Cal. 619; 9 C. J. 238.)

The court found that the true boundary line between the coterminous owners referred to was the line claimed as correct by the defendants in their answer, which line was marked by a fence and ditch thirty feet east of the line claimed by the plaintiffs. We are foreclosed from a discussion of the facts disclosed by the evidence touching this subject of the case by reason of the unintelligible condition of the record. A blackboard diagram was used for illustrative purposes at the trial, which was repeatedly referred to by all the witnesses, but no copy of such diagram came up with the record. Counsel for both parties showed a singular lack of concern for the state of the record and continually propounded questions and accepted answers without objection or protest that, with reference to the boundary line in dispute, had to do with "here," "there," "down this way," "over yonder," and other like indefinite words and phrases, which, while meaningless to us, were nevertheless probably clear to the trial court. The trial judge, with the diagram before him, was in a position to give the testimony of the witnesses a correct interpretation, and we must conclude that he did so, and that the evidence relative to the location of the ditch and fence was such as to properly support the finding of the court thereon. The duty of presenting an accurate and intelligent record on appeal of the evidence adduced at the trial covering the points wherein it is claimed the findings are not sustained by the evidence, devolved upon the appellants. And since they have not

presented such a record for our review, they must suffer any disadvantage now arising because of such failure.

Since it is nowhere claimed by the defendants that they have acquired title to the disputed strip of land by adverse possession, it is unnecessary to discuss that subject.

[2] The judgment as entered should, however, be vacated on account of uncertainty. It is so vague in its definition of the boundary line in controversy that it could serve no purpose so well as to lead to further dispute and controversy. For some reason, unknown to us, the precise description of the boundary line established by the findings was ignored in the judgment, and a line therein described which lacks the definiteness and certainty required of such a judgment. (9 C. J. 293.) No land title man or anyone else accustomed to consider matters of title could properly accept the definition of the controverted line as sufficiently precise or certain, nor could a land surveyor or an executive officer of the court charged with the duty of serving a writ of possession locate the boundary line from or with the aid of anything contained in the judgment. The judgment as entered leaves the parties, for all practical purposes, where they started from at the inception of the controversy. It recites, in effect, that the true dividing line between the lands of the coterminous owners is that located by the predecessors in title of the plaintiffs and defendants over twenty-five years before the filing of the complaint, and marked and located upon the ground by building a ditch and a fence thereon. But where the ditch or fence are now or were located does not accurately appear from the judgment, nor can it be ascertained therefrom.

The judgment is reversed and the cause remanded, with directions to the court below to frame and enter a new judgment, precisely describing by courses and distances, the common boundary line between the lands of the parties to the action and as set out in the findings of the court.

Waste, P. J., and Richards, J., concurred.