SEIDENSTRICKER *v.* HOLTZENDORFF.

4-8739                                                    217 S. W. 2d 836

Opinion delivered February 14, 1949.

*Wm. C. Gibson* and *W. A. Leach,* for appellant.

*Frances Drake Holtzendorff, John D. Thweatt* and *Cooper Thweatt,* for appellee.

ROBINS, J. This suit originated in a dispute as to boundary line between owners of two adjoining tracts in Prairie county. Alleging that she was the owner of the fractional west half of section five, township one, north, range five, west, appellee brought suit in the lower court against appellant, who owned lands lying immediately east of her farm, asking that appellant be enjoined from constructing a fence so as to enclose part of appellee's land and seeking damages for trespass already committed. She alleged that for fifty-five years there had been a well defined boundary between the two tracts, consisting of an old fence, which had been recognized during that period as an agreed dividing line; and that appellant had recently fenced approximately fifteen acres, including a well owned by her and used for pumping water on her rice fields, thereby depriving her of the use of the land to her damage in the sum of $900. The answer was a general denial.

When appellee's complaint was filed a temporary order, restraining appellant from further trespass and directing him to remove the fence already built by him, was made. On final hearing the court found the dividing line to be located as claimed by appellee, enjoined appellant from trespassing across this line, and awarded appellee $675 damages for appellant's interference with cultivation by appellee of land along the dividing line during the years 1946 and 1947. This appeal ensued.

These questions are presented for our determination:

I. Whether the boundary established by the lower court is the correct line, as shown by the government survey; and, if not, whether this line has been established by acquiescence or agreement of the owners of the two tracts.

II. Whether the evidence supports the finding of the lower court that appellee was prevented by appellant from cultivating a portion of her land during the years 1946 and 1947, and also the finding as to amount of damage recoverable by appellee therefor, were correct.

## I.

Each of the litigants presented the testimony of a surveyor, as well as that of other witnesses, tending to establish the boundary line between the northwest quarter of section five, owned by appellee, and the northeast quarter of said section, owned by appellant, in accordance with their respective contentions.

While the surveyors testified from information gathered in surveys made by each of them, there is some uncertainty about the findings of both of them. It did not appear that either surveyor began his survey at any definitely established government monument. Furthermore, it appeared that at the northeast corner of section five there was what is popularly known as a "jog," of 2.49½ chains, there being that distance between said northeast corner of section five and the southeast corner of section thirty-two, township two, north, range five, west, lying immediately north. These two corners ordinarily would coincide.

The irregularity of section five is further exemplified by the fact that, whereas the conventional section, as shown by government survey, contains 640 acres in a square, with each side measuring 80 chains, or one mile, this section, as shown by the original government survey, contains 712.59 acres. The north boundary line of the section is 78.87 chains in length, the west line is 88.62

chains, the east line is 90.08 chains, and only the south line is the standard length, 80 chains.

All these irregularities in the survey, together with others not mentioned here, tend to make somewhat uncertain the precise location of the true line, according to the government survey, between the parties.

But, while it is not shown exactly when the fence was first constructed, it was proved very clearly that for more than thirty years before the controversy between appellant and appellee arose, there was a fence leading south from the southeast corner of a square two acre plot used as a cemetery, located about the middle point of the north line of section five, extending to the middle point of this section, and that this structure was recognized by the owners and their tenants as a division fence. One witness, William Orlicek, testified that this fence, some of the old posts and wire of which were still there, had been, to his knowledge, in existence on this location for twenty-five years, and that during seven years of that time he was appellee's tenant and "plowed up to the old fence line." There was other testimony of like import. The former owner of appellant's land testified that when he was in possession thereof he recognized this old fence as the dividing line and plowed up to it on the east side.

The witnesses and parties all gave their testimony in open court and the surveyors pointed out to the court, on the plats, locations, which, from the testimony as shown in the record, we are unable to identify. Thus the lower court had a better opportunity to evaluate the evidence than is afforded to us.

Acquiescence, by owners of adjoining lands, in a boundary line, as shown by a division fence, for more than seven years will ordinarily confirm the boundary line as thus located, even though the fence may not be placed on the true line between the tracts.

In the case of *Gregory* v. *Jones*, 212 Ark. 443, 206 S. W. 2d 18, dealing with a question similar to the one involved here, we said: "In *Goodwin* v. *Garibaldi*, 83 Ark. 74, 102 S. W. 706, Mr. Justice RIDDICK, in sustaining

a long-existing boundary between adjacent owners, quoted the classic language of Hon. U. M. ROSE, as found in *Cunningham* v. *Brumback,* 23 Ark. 336: ' . . . better that ancient wrongs should be unredressed than that ancient strife should be renewed.' *Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710, is another case in which an old line was sustained, even against a new survey. Appellee argues that the original rail fence ·line was established by a mutual mistake, and should be changed to the 1946 line, and cites *Randleman* v. *Taylor,* 94 Ark. 511, 127 S. W. 723, 140 Am. St. Rep. 141, as authority for such contention. Furthermore, appellee says that there was no *dispute* prior to the establishing of the rail fence line, so—appellee says—the rule stated by Chief Justice HART in *Robinson* v. *Gaylord, supra,* and restated in *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289, does not apply to this case. It is true that in this case the original rail fence line was established without a prior dispute as to boundary; but the recognition of that line for the many intervening years (34 in this case) shows a quietude and acquiescence for so many years that the law will presume an agreement concerning the boundary. In *Deidrich* v. *Simmons,* 75 Ark. 400, 87 S. W. 649, there had been no dispute prior to the establishment of the fence line which had been accepted as the common boundary for many years; and in that case Justice Mc-CULLOCH, speaking for this court, said: 'The proprietors of adjacent lands may by parol agreement establish an arbitrary division line, or an agreement may be inferred from long-continued acquiescence and occupation according to such line, and they will be bound thereby.' So in the case at bar the recognition of a common boundary for a long period of time is evidence of agreement and acquiescence, which may well exist without the necessity of a prior dispute. See 8 Am. Juris. 804. As stated in the annotation in 69 A. L. R. 1491: ' . . . where the owners of adjoining land occupy their ·respective premises up to a certain line, which they mutually recognize and acquiesce in as the boundary line for a long period of time, . . . they and their grantees are precluded from claiming that the boundary line thus recognized

and acquiesced in is not the true one, although such line may not be in fact the true line according to the calls of their deeds.' ''

We conclude that, regardless of whether the line as determined by the lower court is the correct line as shown by the government survey, a preponderance of the evidence established that the division line as fixed by the lower court had been acquiesced in and recognized by each of the owners of the two tracts for more than thirty years and has therefore become the boundary line between their respective farms.

## II.

There was a sharp difference in the testimony as to appellant preventing the cultivation of appellee's land, and also as to amount of his liability therefor. There is little doubt, however, that appellant's action in 1946 in fencing up, without any notice to appellee, part of her land, including the well from which she had to pump water on her rice fields, and in warning off appellee's tenants in 1947, did interfere with her cultivation of the land in controversy, and possibly some adjoining acreage. The lower court made no specific finding as to how the amount of damage was computed; but a review of the testimony does not show that this finding was against the preponderance of the evidence.

The decree of the lower court is affirmed.