Stewart *v.* Bittle.

5-3000

370 S. W. 2d 132

Opinion delivered May 27, 1963.

[Rehearing denied September 16, 1963.]

*N. J. Henley* and *John B. Driver,* for appellant.

*Ivan Williamson,* for appellee.

Paul Ward, Associate Justice. This litigation stems from a dispute over the boundary line between two parcels of land. Appellees contend that a fence, located in the same place for the past thirty years or more, has been generally recognized as the east boundary line of their property during all of said time. Appellant denies this, and contends the fence is some one hundred to one hundred fifty feet east of his true west boundary line.

In order to better understand the issue and the testimony relating thereto, it is necessary to briefly set forth some of the background facts.

Appellees are the sole surviving heirs of J. H. Coe who died in 1946. Shortly before his death he purchased from one D. C. Johnson the land now owned by his heirs. The deed to him described the land as follows:

A strip of land Two (2) acres in width off and across the East side of the Northwest quarter of the Southwest quarter (NW¼ SW¼) and the Southwest quarter of the Northwest quarter (SW¼ NW¼) of Section Seven (7) in Township Fourteen (14) North, Range Twelve (12) West, lying North of the North Sylamore Creek Bluff and

South of State Highway No. 66, and containing 13 acres of land, more or less.

It is conceded that one John Stewart and his predecessors in title have, for many years, owned the Southeast quarter of the Northwest quarter of the same section above mentioned. It will be seen from the above that the forty acres belonging to Stewart lies east of and adjoins part of the Coe land. In 1959 appellant bought a parcel of land, consisting of one and eleven-hundredths acres, from his father, John Stewart. No definite description of appellant's land is contained in the record, but, for the purpose of this opinion, we will assume it lies along the west line of the Stewart forty acres.

When appellant attempted to destroy part of the said fence, appellees petitioned the chancery court to enjoin him. After hearing testimony on both sides, the trial court found that appellees were " . . . entitled to and are hereby vested with title to . . ." the land west of, and up to, the fence. The trial court's finding and decree were based on seven years adverse possession by appellees, and also on "long acquiescence" by the owners of two parcels of land.

After a careful review of the testimony we are of the opinion the weight of the evidence supports the court's finding that the fence was established as the boundary line by "long acquiescence." The testimony is overwhelming, and in fact it is undisputed, that the fence between the two parcels of land has been in existence continuously and in the same position for more than thirty years. Since 1946 some of appellees have, at different times, lived on the Coe land during which time they have pastured the land, and on occasions they have cultivated the same land. Owners of the Stewart land have at no time during all the years objected to the location of the fence or complained about the occupancy by appellees of the land west of the fence—that is, not until the recent acts by appellant which precipitated this litigation.

It may be conceded, as claimed by appellant, that there never was any express agreement to treat the fence as the

dividing line between the two parcels of land. Such an agreement, however, may be inferred by the actions of the parties. In the early case of *Deidrech* v. *Simmons*, 75 Ark. 400, 87 S. W. 649, this Court said:

"The proprietors of adjacent lands may by parol agreement establish an arbitrary division line, or an agreement may be inferred from long continued acquiescence and occupation according to such line, and they will be bound thereby. (Citing cases.)

\* \* \*

"In *Burris* v. *Fitch, supra,* [76.Cal. 395, 18 Pac. 864] the Supreme Court of California held that the acquiescence by a landowner, manifested by silent assent or submission, with apparent consent, for a long period, in the location of a fence as the dividing line between his land and that of the adjoining proprietor, operates to estop him from questioning the correctness of the location."

On this point, the principle announced in the *Simmons* case has been approved by us many times. See: *Payne* v. *McBride,* 96 Ark. 168, 131 S. W. 463; *Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710; *Peebles* v. *McDonald, etc.,* 208 Ark. 834, 188 S. W. 2d 289; *Lollar* v. *Appleby,* 213 Ark. 424, 210 S. W. 2d 900; *Batson* v. *Harlow,* 215 Ark. 476, 221 S. W. 2d 17; and, *Tull* v. *Ashcraft,* 231 Ark. 928, 333 S. W. 2d 490. In the last cited case, the trial court held a fence had not been accepted as the boundary line, but we reversed the trial court saying:

"We have frequently held that when adjoining landowners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence."

In the same case we quoted from *Gregory* v. *Jones,* 212 Ark. 443, 206 S. W. 2d 18, this statement:

" 'It is true that in this case the original rail fence line was established without a prior dispute as to boundary; but the recognition of that line for the many intervening years (34 in this case) shows a quietude and acquie-

scence for so many years that the law will presume an agreement concerning the boundary.' "

See also *Western* v. *Hilliard,* 232 Ark. 535, 338 S. W. 2d 926. There can be no doubt, in this case, that the fence was visible, that it was in place for at least thirty-four years, and that the owners of the land east of the fence "silently acquiesced" in the location of the fence.

Appellant called as a witness the county surveyor and offered to introduce a survey of the subject lands on file in his office. The trial court refused the proffered survey and appellant assigns this action as reversible error. For several reasons, we are unable to agree with appellant. In the first place, what the official plat showed was immaterial, since appellees did not claim the fence was located on the true line. In the second place, since appellant did not set out what the survey would have shown relative to the position of the fence and the true line we cannot say appellant was prejudiced by its exclusion. In *Wallace v. Riales,* 218 Ark. 70, 234 S. W. 2d 199, we said:

"We have repeatedly held that an objection to the exclusion of testimony cannot be considered on appeal in the absence of a showing of what the testimony would have been."

See also *Weston* v. *Hilliard, supra.*

It is our conclusion therefore that the decree of the trial court should be, and it is hereby, affirmed.