MORTON v. HALL.

5-3694 396 S. W. 2d 830

Opinion delivered December 13, 1965.

*N. J. Henley, John B. Driver,* for appellant.

*Murphy, Arnold & Purtle, Reed & Blackburn,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a boundary line dispute between adjoining landowners. Appellants own north of the boundary (part of the NE NE); and appellees own south of the boundary (part of the SE NE). There were really three issues before the Trial Court. The first was the location of the true (geographic or survey) boundary. Then assuming the surveyors established the true boundary line between the two tracts, the remaining questions were: (a) did appellants acquire title by adverse possession down to a fence about 45 feet south of the true line? or (b) if not, had the said fence become the boundary by acquiescence over a long period of time.

Appellees, Hall and wife, own the land to the south of the boundary; and they filed suit in the Chancery Court to quiet their title. They named as defendants the appellants, their neighbors to the north. The appellants, by answer, admitted the appellees owned some land to the south, but said:

"Defendants further pleading would state that there is now, and has been for more than 21 years last past, a division fence between the lands belonging to defendants and plaintiffs; that said fence has, for the period aforesaid been recognized by the predecessors in title as a common boundary between the lands of plaintiffs and defendants, and has been fully recognized and acquiesced in by said landowners."

At that stage in the proceedings, and by stipulation, the cause was transferred to the Circuit Court, and tried as an action in ejectment. Trial to a jury resulted in a verdict and judgment for appellees; and appellants bring this appeal, urging three listed points, but which we will discuss under two topic headings.

## I.

Appellants' first point is: "That the Court erred in refusing appellants' motion to strike the testimony of the County Surveyor, A. O. Flowers."

Appellees deraigned record title to their lands from the Sovereignty of the soil to themselves.[1] To establish the true or geographical north boundary of their line, the appellees called as their witness Mr. A. O. Flowers, former County Surveyor. He testified as to a survey made by him and the present County Surveyor, Hubert Heigel, to establish the true or geographical boundary line between the lands of the litigants. Mr. Flowers testified that the corners stated in the Government field notes had long since been obliterated; but that he started at what was commonly accepted by all in the community as the common corner of Sections 10, 11, 14, and 15, and ran north 3960 feet to get to the west end of the true or geographical boundary line between the litigants. Mr. Flowers testified that then he went east to an iron pin in the road in front of Cherokee Grill, which iron pin had been used in many surveys, and that he ran back west and came to the same boundary line as previously located. He testified that both sides to this litigation were represented at all of this survey; and that the result of such survey was to find that the fence of the appellants was over on the appellees' land some 45 feet at one end an something over 100 feet at the other end of the fence. The following occurred:

"MR. HENLEY: The defendant now moves to strike all that testimony of the witness, Mr. Flowers, relative to the accuracy of his survey, because he has testified he was given hearsay information as to the accuracy of the location of various quarter section corners, and section corners. Therefore, it does not in law constitute a proper and legal survey.

[1] Attorneys for the appellants (defendants) stated: "MR. HENLEY: The defendants have no objection to the evidence adduced on the part of the plaintiff showing muniment and chain of title from the original United States Patent down to Mr. Hall, the present owner of record title . . . ."

"MR. REED: He testified that he started from a corner known and recognized by the public surveys in years past, that those were known as established corners and people have been using them for years.

"THE COURT: The Court thinks that is a matter for the jury to determine. Of course, the jury will take all the testimony into consideration in determining how much weight to give to his testimony. The jury will take all that into consideration, but I think it is a matter for the jury to determine how much weight they will give to his survey, so I believe your objection will be overruled.

"MR. HENLEY: Note our exceptions."

We think the ruling of the Trial Court was correct. Of course, Mr. Flowers' survey was not a "legal" survey in that it was not squared and tested by known corners, but the weight to be given to Mr. Flowers' survey was— as said by the Trial Court—"a matter for the jury to determine." Furthermore, Hubert Heigel, the present County Surveyor, testified that he assisted Mr. Flowers in making the survey and testified to the same effect as Mr. Flowers; and appellant did not offer any motion to exclude Heigel's testimony. We have discussed this survey matter in detail because the same question may arise on retrial, which may be necessitated by our holding on the next point.

## II.

Appellants' other points relate to the giving of an instruction by the Court. As we have heretofore mentioned, the appellants claimed the land south of the surveyed boundary and down to the fence by either of two claims: (a) adverse possession, or (b) boundary by acquiescence. At the request of the appellees the Trial Court gave their Instruction No. 1 which related to adverse possession; and at the request of the appellants the Trial Court gave their Instruction No. 1 which related

to boundary by acquiescence.[2] These instructions were given without objection. Then the Court, on its own motion, went further and said:

"I want to go a little further, gentlemen, on the matter of this fence. In order for a fence between two tracts of land to become the established line between those two tracts, or as I mentioned a while ago the presumed, agreed line, both parties on either side of that fence must make some use of the land up to the fence line, all along acknowledging that as the line between the two tracts. Now, if there is such use of the land on either side of this fence line, all along there, all the time acknowledging he does not own the land up to the line, it would not become the established line. It must be recognized, acknowledged and claimed by both parties on either side of the fence, and recognized by them as the boundary line between the two tracts. If there is such use as that for a period of 7 years, or more, it is presumed to be the agreed division line between the two tracts."

The appellants' attorney immediately objected to the instruction by the Court, saying:

"The statement made by the Court, I understand must be some use or overt recognition of the land by the parties on either side of the boundary line, to which action of the Court in giving that, the last, instruction, the defendants object and except for the reason it contradicts the Instruction No. 1 given on behalf of the defendants, relative to silent acquiescense for the statutory period."

---

[2] This instruction reads:

"You are instructed that if adjoining land owners, either by themselves or through their tenants and agents, acquiesce in and govern themselves by a division fence for 29 years, there is a presumption of law that such a division fence and line is an agreed division line, though the fence is not on the true line. And in this connection you are further told that if you find from a preponderance of the evidence that the adjoining land owners of the tracts of land involved in this case silently acquiesced for many years in the location of the present fence on said land as the visible evidence of the division line, the fence line becomes the boundary between the parties because of such acquiscence, and your verdict should be for the defendants, Sam D. Morton, Jr. and Allie Morton."

We are compelled to hold that the instruction that the Court gave on its own motion was erroneous. If there was a boundary by acquiescence then there did not have to be an actual adverse holding up to that boundary fence. See *Webb* v. *Miller,* 236 Ark. 245, 365 S. W. 2d 450; *Stewart* v. *Bittle,* 236 Ark. 716, 370 S. W. 2d 132; *Williamson* v. *Rainwater,* 236 Ark. 885, 370 S. W. 2d 443; and *Tull* v. *Ashcraft,* 231 Ark. 928, 333 S. W. 2d 490. In the last cited case we said:

"We have frequently held that when adjoining landowners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence. *Deidrech* v. *Simmons,* 75 Ark. 400, 87 S. W. 649; Robinson v. Gaylord, 182 Ark. 849, 33 S. W. 2d 710; *Seidenstricker* v. *Holtzendorff,* 214 Ark. 644, 217 S. W. 836. As we said in a very similar case, *Gregory* v. *Jones,* 212 Ark. 443, 206 S. W. 2d 18: 'It is true that in this case the original rail fence line was established without a prior dispute as to boundary; but the recognition of that line for the many intervening years (34 in this case) shows a quietude and acquiescence for so many years that the law will presume an agreement concerning the boundary.' "

In the instruction on its own motion, the Circuit Court evidently confused adverse possession up to a fence line, as discussed in *Brown Paper Mill* v. *Warnix,* 222 Ark. 417, 259 S. W. 2d 495, with boundary by acquiescence, as discussed in *Tull* v. *Ashcraft, supra,* and the several cases heretofore cited. There is no requirement of adverse user to the agreed fence in the case of boundary by acquiescence. Therefore, for the error in the Court's instruction, the judgment is reversed and the cause is remanded.