Austin JENNINGS and Lyndell Burford Jennings *v.* Charles G. BURFORD and Mrs. Charles G. Burford

CA 97-316                                         958 S.W.2d 12

Court of Appeals of Arkansas
Division IV
Opinion delivered December 22, 1997

*Dunn, Nutter, Morgan & Shaw,* by: *R. David Freeze* and *Christie G. Adams,* for appellants.

*Kinard, Crane & Butler, P.A.,* by: *David F. Butler,* for appellees.

JUDITH ROGERS, Judge. Appellants Austin Jennings and Lyndell Jennings, husband and wife, appeal the Columbia County Chancery Court's denial of their petition to quiet title to land lying between forty acres that they own and an adjoining forty-acre tract owned by the appellees, Mr. and Mrs. Charles Burford. In its order denying appellants' petition to quiet title, the chancery court determined that the boundary line between the two forty-acre tracts had been established by acquiescence and was marked by a meandering fence that appellee Charles Burford had used to contain cattle on his land for at least twenty years. Appellants assert six allegations of error. We affirm as modified.

The two forty-acre tracts at issue are located north-south relative to each other. Appellants own the northern tract and appellees own the southern. Appellant Austin Jennings and appellee Charles Burford each obtained his respective tract from a common grantor, W.W. Burford. W.W. Burford was the father-in-law of appellant Austin Jennings, the father of appellant Lyndell Jennings, and the father of appellee Charles Burford. Appellant Austin Jennings purchased his forty-acre tract from W.W. Burford in June 1957. Appellee Charles Burford purchased his forty-acre

tract from W.W. Burford, his father, in April 1961. Both tracts are comprised of farm land, pasture, and woodland. The dispute between the parties over the location of the boundary line between their land began in 1992 when appellee Charles Burford stopped the appellants from cutting timber on what he believed to be his land. The appellants filed their quiet title action in August of 1992. The appellees answered and asserted that there was a boundary between the tracts by acquiescence, which was marked by a fence. A hearing was held on the appellants' quiet title action in chancery court in May 1996.

First, appellants assert that the chancery court erred in finding that there was a boundary line by acquiescence between the two forty-acre tracts that followed a meandering fence that appellee Charles Burford had used for at least twenty years to contain cattle. Appellants contend that the chancery court erred in so finding because: (1) there was no evidence proving that the parties intended that the fence serve as a boundary line; (2) there was no evidence that a fence ran contiguously between the two forty-acre tracts; and (3) there was no evidence that there was a seven-year period during which the parties acquiesced in the fence as a boundary line.

The case-law principles that govern whether a boundary line has been established by acquiescence are well settled. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. *Walker v. Walker*, 8 Ark. App. 297, 651 S.W.2d 116 (1983). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Warren v. Collier*, 262 Ark. 656, 559 S.W.2d 927 (1978); *Summers v. Dietsch*, 41 Ark. App. 52, 849 S.W.2d 3 (1993). The period of acquiescence need not last for a specific length of time, but it must be for "many years" or "a long period of time" sufficient to sustain the inference that there has been an agreement concerning the location of the boundary line. *See Seidenstricker v. Holtzendorff*, 214 Ark. 644, 217 S.W.2d 836 (1949). This period varies with the facts of each case, just as all circumstantial evidence does,

unlike the seven years required to take land by adverse possession, which is a statute of limitations for commencement of an action to recover land adversely possessed. *See* Ark. Code Ann. 518-61-101(a) (1987). Moreover, establishment of a boundary line by acquiescence does not require adverse possession of the land by one party. *See Morton v. Hall*, 239 Ark. 1094, 396 S.W.2d 830 (1965). When the adjoining landowners occupy their respective premises up to the line they acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus acquiesced in is not the true boundary, although it may not be. *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972). A boundary line may be established by acquiescence whether or not preceded by a dispute or uncertainty as to the boundary line. *Id.* Where a boundary line by acquiescence can be inferred from other facts presented in a particular case, a fence line, whatever its condition or location, is merely the visible means by which the acquiesced boundary line is located. *See Camp v. Liberatore*, 1 Ark. App. 300, 615 S.W.2d 401 (1981). The location of a boundary line is a question of fact, and we must affirm a chancery court's location of a boundary line unless its finding is clearly against a preponderance of the evidence. *Rabjohn v. Ashcraft*, 252 Ark. at 571; *Killian v. Hill*, 32 Ark. App. 25, 795 S.W.2d 369 (1990).

Steve Lee, appellee Charles Burford's son-in-law, testified on behalf of the appellees. Mr. Lee testified that he was familiar with the land at issue and that he lived on part of the appellees' land. He testified further that he helped maintain a barbed-wire fence between the appellants' property and the appellees' property. Mr. Lee testified further that the fence was enough to keep cows from going north onto the appellants' property. Mr. Lee testified further that this barbed-wire fence was strung from posts and trees and that the fence traversed the length of the appellees' forty-acre tract.

Appellee Charles Burford testified that his father sold the appellants their forty-acre tract in 1957 and that his father had sold an adjoining forty-acre tract to him in 1961. Mr. Burford testified that sometime in the 1960s he and appellant Austin Jennings had had a conversation about cutting timber near the fence line

between their forty-acre tracts. Mr. Burford characterized this conversation as follows: "When he decided to cut his timber he wanted to know, he asked me did I know where the boundary line was between me and him? I said as far as I'm concerned, it's the fence line. That's what my dad always said. I said you cut on the north side, I'll cut on the south side of the fence." Mr. Burford testified further that appellant Jennings did not cut any trees on the south side of the fence and that he (Burford) did not cut any trees on the north side of the fence. Mr. Burford testified further that since 1951, when he and his father purchased cattle, he had maintained the fence that he regarded as the boundary line and that the fence had always been able to hold cattle on his side of the fence. He testified that he had kept the fence in repair to hold cattle and that he had bushhogged a right of way approximately twenty feet wide. Mr. Burford testified further that, regardless of the results of the surveys that had been made to determine the boundaries of the two forty-acre tracts, it was his position that the dividing line between the two tracts was the fence that he had maintained since 1951 in order to keep cattle on the southern tract. This testimony by appellee Charles Burford and his son-in-law, Steve Lee, was contradicted by testimony given by the appellants.

The standards governing our review of a chancery court decision are well established. Although we try chancery cases *de novo* on the record, we do not reverse unless we determine that the chancery court's findings of fact were clearly erroneous. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). In reviewing a chancery court's findings of fact, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Holaday v. Fraker*, 323 Ark. at 525; *Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993). We conclude that the chancery court's finding that the meandering fence was a boundary line by acquiescence was not clearly erroneous.

Second, appellants argue that the chancery court erred in relying upon the testimony of the appellees' witness, Jimmy Askew, concerning the survey that he conducted on the disputed property in order to determine the true boundary line between

the parties' respective tracts. At the outset, we note that there is little, if any, connection between the accuracy of Mr. Askew's survey and the chancery court's finding of a boundary line by acquiescence. The court's finding was based on the testimony of appellee Charles Burford and that of his son-in-law, Steve Lee. Burford himself stated that, regardless of the results of the surveys, the boundary line between the two tracts was the fence he had maintained to keep cattle on the southern tract. However, in their brief, appellees explain the significance of Askew's survey to the chancery court's finding of a boundary line by acquiescence by noting that the court used the Askew survey as a reference point for concluding the fence line was the acquiesced boundary between the two tracts of land. Also, the chancery court's decree does note that the boundary line is the meandering fence "reflected by the Askew survey." Therefore, we will address the appellants' allegation of error concerning the Askew survey.

In essence, Mr. Askew testified that he had been a land surveyor for approximately twenty-five years, that he was qualified as a registered surveyor, and that he had conducted approximately 2,000 surveys. With regard to the survey that he had done for appellee Burford, Mr. Askew testified that, based upon previous surveys he had done in the area, he knew the locations of the southeast and southwest corners of the Southeast Quarter of Section Three. Mr. Askew testified further that he determined the boundary lines of only the Southeast Quarter of Section Three and testified further that his determination of these boundaries "checks extraordinarily well with the records." The location of a boundary line is a question of fact, and we affirm a chancery court's finding of the location of a boundary line unless the court's finding is clearly against a preponderance of the evidence. *Rabjohn v. Ashcraft*, 252 Ark. at 571. The credibility and weight of Askew's testimony was a matter for the chancery court to determine. *See Killian v. Hill*, 32 Ark. App. at 28. Given this testimony by Mr. Askew, we can not say that the chancery court erred in finding his testimony credible because, in cases where there are inconsistent theories as to the location of a boundary line, a survey establishing a boundary line may be based on artificial monuments and these monuments may be established by parol evidence. *See Garren v.*

*Kelley,* 249 Ark. 906, 462 S.W.2d 861 (1971); *Rice v. Whiting,* 248 Ark. 592, 452 S.W.2d 842 (1970).

Next, appellants argue that the chancery court erred in denying their hearsay objection that was made during the direct examination of appellee Charles Burford. Appellants' counsel objected on the basis of hearsay when Burford replied, "Yes, sir," after having been asked if he had any discussions with his father concerning the location of the marker that was to divide the forty-acre tracts. The chancery court did not err in denying this objection because appellee Burford's reply to the question was not hearsay. Hearsay is a statement made by an out-of-court declarant that is repeated in court by a witness and is offered into evidence to prove the truth of the matter asserted in the out-of-court statement. *See Gautney v. Rapley,* 2 Ark. App. 116, 617 S.W.2d 377 (1981); Ark. R. Evid. 801(c). Hearsay offered by an in-court witness is inadmissible except as provided by law or by the Rules of Evidence. *Easterling v. Weedman,* 54 Ark. App. 22, 922 S.W.2d 735 (1996); Ark. R. Evid. 802. Appellee Burford's reply of "Yes, sir," is not hearsay because it is not a repetition of a statement made out of court but, instead, is Burford's own statement that he had had a discussion with his father. A witness who states that he or she had conversations or discussions with others, but does not repeat what someone else said, has not violated the rule against hearsay. *See Shamlin v. Shuffield,* 302 Ark. 164, 787 S.W.2d 687 (1990).

Finally, appellants contend that the chancery court's decree is deficient in that it does not locate the boundary line between the two forty-acre tracts by specific description. Appellants correctly note that chancery court decrees that establish boundary lines must locate them by specific description. *See Harris v. Robertson,* 306 Ark. 258, 813 S.W.2d 252 (1991). The chancery court's decree describes the boundary line between the parties' land as the meandering fence "reflected by the Askew survey." In their brief, appellees seem to concede that this description of the boundary line is not sufficiently specific.

We agree that the description of the boundary line in the chancery court's decree was not sufficiently specific. How-

ever, this lack of specificity does not constitute reversible error but was, instead, a mere omission or oversight. Pursuant to Arkansas Rule of Civil Procedure 60(a), we grant leave to the chancery court to amend the decree by adding a more specific description of the boundary line between the parties' land.[1]

For the reasons set forth above, we affirm as modified the Columbia County Chancery Court's decree denying the appellants' petition to quiet title and establishing a boundary line by acquiescence between the parties' land.

Affirmed as modified.

BIRD and CRABTREE, JJ., agree.

---

[1] In a recent supreme court decision, *Petrus v. Nature Conservancy*, 330 Ark. 722, 957 S.W.2d 688 (1997), the court found that the decree, which did not identify the boundary lines of the disputed property but ordered a future survey to establish the boundary lines, lacked finality.. Thus, the supreme court dismissed the appeal. In our case, however, the decree described the boundary line between the parties' land as the meandering fence "reflected by the Askew survey." There is no unresolved issue that must be determined. We have only granted leave to the chancery court to amend the decree and provide the legal description of the fence line reflected by the Askew survey.