WILSON-WARD COMPANY v. FLEEMAN.

Opinion delivered June 22, 1925.

1.  APPEAL AND ERROR—PRESUMPTION FROM ABSENCE OF INSTRUCTIONS.—Where instructions are not set out in the appellant's brief, it will be conclusively presumed that the case was submitted under instructions which correctly declared the law.

2.  FACTORS—NEGLIGENCE—DAMAGES.—Where a factor fails or neglects to comply with his principal's instructions to sell cotton of the latter in his possession at a certain time for the best available price, he is liable for the difference between the price then obtainable and the amount actually received at a later date, though the market price could not then have been obtained, as the factor had no right to withhold the cotton to assist in supporting the market.  •

3.  APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.—In a suit against a factor for failure to sell his principal's cotton at the Memphis market, where a witness testified as to the market price at Memphis, it was not reversible error to permit the witness to testify as to the market prices at two neighboring towns, whose markets were controlled by the Memphis market.

4.  TRIAL—SUFFICIENCY OF VERDICT.—A verdict is not so uncertain that judgment can not be entered on it if, when read in connection with the answers to special interrogatories, and the admitted facts, the verdict is for a sum at least equal to the judgment rendered.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. W. Bandy,* Judge; affirmed.

*Chas. M. Bryan, Prewitt Semmes* and *Arthur G. Brode,* for appellant.

*Little, Buck & Lasley,* for appellee.

SMITH, J. Appellant, a corporation engaged in business in Memphis, Tennessee, as a cotton factor, sued appellee for a balance alleged to be due on advances made on consignments of cotton shipped to appellant by appellee, to be sold for appellee's account.

Appellee admitted the correctness of the account sued on, but filed an answer and cross-complaint, in which he alleged that he did not owe appellant anything, but that appellant was indebted to him, for the reason that appellant had negligently failed to sell appellee's cotton when directed, and appellee prayed judgment on account of such negligence in the sum of $1,523.21.

Special interrogatories were submitted to the jury, and there was a general verdict in favor of appellee, and from the judgment pronounced thereon is this appeal.

Appellee is a farmer at Manila, Arkansas, and on December 27, 1919, he shipped appellant sixteen bales of cotton, to be sold on commission. At the time of this shipment appellee was not indebted to appellant in any amount, but he drew a sight draft on appellant for the sum of $2,000, with bills of lading attached, and this draft was paid as an advance on the cotton. In January, 1920, appellee shipped six additional bales of cotton, and drew $500 against this shipment. These twenty-two bales of cotton weighed 11,388 pounds. Appellee had, in addition, in appellant's hands one bale of cotton, which was a part of a shipment made in May, 1919. This last bale of cotton was sold on February 6, 1920, for forty cents per pound. In October, 1921, appellee shipped appellant five additional bales of cotton, making twenty-eight bales in all. These five bales were promptly sold, and no question is made about them.

About the 1st of March, 1920, appellee, accompanied by J. M. Hutton, who was also a farmer at Manila, went

to Memphis to see appellant about the sale of his cotton.

It was explained to appellee by the president of the appellant company and appellant's cotton salesman that the warehouses in Memphis were crowded with cotton for which there was but little demand. Appellant itself had on hand at that time something over thirteen thousand bales of cotton, on which the banks had loaned $100 per bale, with warehouse receipts for the cotton as collateral. Appellee was told that the farmers would have to assist in supporting the market or it would collapse, as it was impossible to sell any considerable quantity of cotton at the prevailing quotations, and that, if the sale of cotton was forced, it would have to be sold at a price considerably less than the quotations. It appears, however, that, notwithstanding these assurances, appellee directed that his cotton be sold for the best price obtainable and without reference to the quotations.

Sales of cotton were made by displaying samples taken from the bales, which were placed on tables in the salesroom. No samples of appellee's cotton were on display, but the samples which were taken from appellee's bales were found under a table by the office boy. Appellee's salesman explained that this fact did not indicate that proper effort was not being made to sell the cotton, as the cotton was sold by grades, and other cotton of the same grade as that of appellee was on display.

Appellant's salesman told appellee that appellee's cotton was worth an average of thirty-five cents per pound, and would bring that price if the quotations could be obtained, but he stated that there was no demand for it at that price. Appellee then told the salesman to sell his cotton at the best price obtainable.

The president of appellant company admitted that the cotton could have been sold for twenty or twenty-one cents per pound at the time appellee ordered it sold; but appellee insists that the testimony of this witness

and that of the salesman shows that a sale of the cotton might have been made for as much as twenty-nine and one-half cents per pound at the time appellee ordered it sold. In any event, we are unable to say that the testimony in its entirety is insufficient to support the finding that it could have been sold March 1st, when the direction to sell was given, at twenty-five cents per pound. In response to an interrogatory specially submitting this question, the jury found that the cotton could have been sold at that time for twenty-five cents. By the testimony of appellant's officers the cotton was then worth thirty-five cents per pound according to the quotations in the Memphis market.

The instructions given in the case are not set out in appellant's brief, and it will therefore be conclusively presumed that the case was submitted to the jury under instructions correctly declaring the law.

Appellant insists that a verdict should have been directed in its favor under the undisputed evidence, and asserts that the case is analogous to and should be controlled by the decision of this court in the case of *Wynne, Love & Co.* v. *Bunch,* 157 Ark. 395.

There is, however, a very important distinction between the two cases. In the former case Bunch, the owner of the cotton, directed the factor to sell his cotton, but the direction contemplated a sale at the market quotations, a thing which could not be done because there was no demand for the cotton at the quotations then prevailing. Here the testimony is that the owner of the cotton gave explicit and peremptory instructions to the factor to sell at the best price obtainable, whatever that might be, and the president of appellant company expressly admitted that a sale could have been made after directions to sell had been given for a price sufficient to repay the advances made on the cotton. The cotton was finally sold by appellant at prices ranging from 11½ cents to 17½ cents per pound.

Appellee had the right to order his cotton sold under these circumstances. He was under no obligation to assist in supporting the market by withholding his cotton because the market price could not be obtained, and appellant should have obeyed the direction to sell. This appears to be the essence of this case, and the testimony shows that the factor disregarded his principal's express instruction. Indeed, the chief question of fact appears to be whether the factor could have sold the cotton for as much as twenty-five cents per pound, and the answer of the jury to the interrogatory submitting that issue is conclusive of the question, as the testimony is legally sufficient to support the finding made.

It is insisted that there was no testimony to show the grade or staple of the cotton; but the testimony of Hutton, who examined the cotton in appellant's office and who was familiar with grades and staples, sufficed for that purpose. Witness Hutton was asked on his direct examination if he knew "whether or not cotton of a similar grade was being sold by other people in Memphis during January, February and March, 1920" and answered, "As I remember, cotton was selling for around thirty-two up to thirty-eight and forty cents." Upon his cross-examination the witness was asked if he did not have reference to the Blytheville and Manila markets, and he answered, "yes". The appellant then moved to strike the former answer of the witness from the record. This the court declined to do, and an exception was duly saved. We think there was no prejudicial error in the ruling of the court for the reasons: (1) the president and salesman of appellant company had testified that cotton was selling in Memphis at prices equaling those stated by the witness when sales were made; (2) the witness further stated that the markets at Blytheville and Manila were regulated by and dependent upon the Memphis market where the cotton was stored for sale; (3) the answer of the witness did not relate to the Blytheville

and Manila markets alone, but included the Memphis market as well.

It is finally and earnestly insisted that the answers of the jury to the interrogatories submitted were not sufficiently definite to form the basis of the jury's verdict, and that they are in conflict with the general verdict.

The interrogatories were submitted for answers by the jury at the request of appellant, and there were three of these. The first required the jury to say whether the appellant was guilty of negligence in the sale of the cotton; and the jury answered, "yes." The second directed the jury to find, if appellant was found guilty of negligence, at what price the cotton could have been sold, and when. The jury answered, "At twenty-five cents per pound, on the day when it was ordered sold." The third interrogatory required the jury to find what quantity could have been so sold; and the jury answered, "11,388 pounds."

The court submitted two additional interrogatories over the objection of appellant. The first of these, which was numbered 4, asked what the amount of appellant's account was on the day appellee ordered his cotton sold; and the jury answered "$2,500." The next interrogatory, which was numbered 5, prepared by the court, asked what the last five bales of cotton shipped to appellant sold for; and the jury answered, "$221.18." Appellee's attorney then stated that he did not question appellant's account, and the jury returned a general verdict in favor of appellee for $2,847, "less his account with the plaintiff at the time the cotton was ordered sold," and upon this general verdict and the answers to the interrogatories the court rendered judgment in favor of appellee for the sum of $250, this being done after appellee had entered a *remittitur* in the sum of $318.18.

We do not agree with counsel for appellant that the verdict of the jury was so uncertain that no proper

judgment could be entered thereon. We think, when this verdict is read in connection with the answers to the interrogatories and the general verdict and the undisputed and admitted facts, no error prejudicial to appellant was committed in rendering judgment for appellee for $250. In the first place, it does not appear that the jury took into consideration the bale of cotton sold February 6, 1920, at forty cents per pound, about which there was never any dispute. The answer to interrogatory No. 5 gave the proceeds of the five bales of cotton shipped in 1921 at $221.18. There was no controversy about this item.

In answer to interrogatory No. 4 the jury answered that appellant's account on the day appellee ordered the cotton sold was $2,500. This was the amount of money advanced to appellee, but did not include interest, or the commissions on the sales, nor the carrying charges, such as storage and insurance, and it was for this reason that appellee remitted $318.18 of the judgment, this sum being in excess of those items.

Had the sale been made when the jury found that it might have been made at twenty-five cents per pound, the proceeds of the sale would have more than paid appellant the sum then due it, including interest and charges, and if interest were calculated from that day it would only result in increasing the amount of appellee's judgment.

Under the facts recited, we think the account may be stated from the general verdict and the answers to the interrogatories as appellee has stated it in his brief, to-wit:

| | | |
|---|---|---|
| March, 1920—To cash advanced to defendant | | $2500.00 |
| March, 1920—By 11388 lbs. cotton at 25c | $2847.00 | |
| Oct., 1920—By 5 bales, net | 221.18 | |
| Balance due defendant | | 568.18 |
| | $3068.18 | $3068.18 |

From this balance of $568.18 a *remittitur* was entered and judgment was rendered for the balance then

remaining of $250. In other words, appellee has removed all uncertainty by resolving all doubts against himself and entering a *remittitur* for a sum sufficiently large to cover all interest and carrying charges which appellant might claim under any circumstances.

The case of *Russell v. Webb,* 96 Ark. 190, was a suit in ejectment, and the verdict returned was meaningless except when read in connection with a survey of the land which was in evidence. In upholding the judgment pronounced upon this verdict and which could have been prepared only by reference to this survey, the court said: "A verdict should be definite and certain and free from obscurity, but it is not necessary that there should be any absolute precision in the wording of the verdict. If the meaning of the jury can be clearly collected from the verdict, it ought not be set aside. It is the settled rule that the verdict should be construed liberally, with the view of ascertaining the meaning of the jury and supporting their verdict. And if the issue presented by the pleadings has been substantially decided by the jury, and their meaning can be satisfactorily collected from their verdict, then it is the duty of the court to mould it into proper form by its judgment."

Under that rule, as applied here, we think it clearly appears that the jury found for appellee in a sum at least equal to the judgment rendered.

Upon a consideration of the whole case we think no error prejudicial to appellant was committed, and the judgment of the court below is therefore affirmed.