DIERKS LUMBER & COAL COMPANY *v.* TEDFORD.

4-6170                                    146 S. W. 2d 918

Opinion delivered January 27, 1941.

*Abe Collins* and *Lake & Lake,* for appellant.

*J. M. Jackson* and *Alfred Featherston,* for appellee.

SMITH, J. On April 9, 1890, H. P. Epperson owned and resided on southwest quarter northeast quarter section 29, township 7 south, range 27 west. He also owned the forty acres immediately south of this tract, described as northwest quarter southeast quarter section 29, township 7 south, range 27 west. At that time a public road ran from Epperson's residence through both forty-acre tracts, known as the Center Point and Caddo Gap road.

On the date above mentioned Epperson and wife conveyed to O. T. Pope a fractional part of the northwest quarter southeast quarter, section 29, which was described as being bounded on the east by this public road. This was a definite and certain description, the land conveyed being the portion of the forty-acre tract lying west of the road.

On November 21, 1891, Pope conveyed the fifteen-acre tract of land to Hill, Fontaine & Company, a co-partnership. The surviving members of that firm and the widow of a deceased member conveyed to Napoleon Hill Cotton Company on June 14, 1915, and the Cotton

Company, on September 24, 1917, conveyed to Dierks Lumber & Coal Company. In all of these deeds the same description of the land was employed.

By another chain of conveyances, beginning with Epperson, W. A. Tedford acquired title to "That part of the northwest quarter southeast quarter, containing 25 acres lying east of the Center Point and Caddo Gap road." In all the deeds in that chain of title the same description was employed.

The location of this road, with reference to which both tracts of land were described, was changed, being moved to the east, and this litigation involves the title to a tract of land lying between the old road and the new one, containing about 13 acres. The road was in its present location when. Tedford obtained his deed, and when the Lumber Company obtained its deed, and had been so located for a number of years. The land conveyed to Tedford was described as 25 acres lying east of the Center Point and Caddo Gap road; while the land conveyed to the Lumber Company was described as 15 acres lying west of the road.

There was a trial before a jury, and verdict and judgment were for Tedford, from which the Lumber Company has appealed. No error was assigned in the motion for a new trial in giving, or in refusing to give, instructions, and the instructions were not brought forward into the bill of exceptions. There is a conclusive presumption, therefore, that the case was submitted to the jury under correct instructions.

The insistence is that the deeds to the parties to this litigation should be construed with reference to the location of the land at the time of their execution. But these deeds are ambiguous. The ambiguity arises out of the fact that in none of the deeds in the Lumber Company's chain of title was there any intention to convey more than 15 acres; whereas, in all the deeds in Tedford's chain of title was there any intention to convey less than 25 acres. The lands described in the two chains of title —15 acres in one and 25 acres in the other—make 40 acres, which is the area and acreage of the northwest

quarter southeast quarter, section 29, and all the deeds describe the land as being in that forty-acre tract. The acreage in one deed was described as containing 15 acres, more or less, and in the other as containing 25 acres, more or less, evidencing the fact that there had been no exact survey, but that the two deeds, together, were intended to convey the entire forty-acre tract.

In the case of *Scott* v. *Dunkel Box & Lbr. Co.*, 106 Ark. 83, 152 S. W. 1025, upon the authority of the cases of *Dorr* v. *School District*, 40 Ark. 237, and *Walker* v. *David*, 68 Ark. 544, 60 S. W. 418, it was said that "Facts, existing at the time of the conveyance and prior thereto, may be proved by parol evidence with a view of establishing a particular line as being the one contemplated by the parties, when by the terms of the deed such line is left uncertain."

It was said, also, in the Scott case, *supra*, that "'A call for quantity in a deed must yield to a more definite description by metes and bounds. The quantity of land conveyed is generally mentioned in the deed; but without an express averment or covenant as to quantity, it will always be regarded as a part of the description merely, and it will be rejected if it be inconsistent with the actual area of the premises, if the same is indicated and ascertained by known monuments and boundaries. It aids but does not control the description of the granted premises.' *Campbell* v. *Johnson*, 44 Mo. 247."

Appellant cites *Turner* v. *Rice*, 178 Ark. 300, 10 S. W. 2d 885, and other cases, to the effect that a grant of land by government call takes all the call, notwithstanding the acreage stated in the description. Cases are also cited by appellant to the effect that the designation of acreage usually yields to more definite words describing boundaries. So, here the Center Point and Caddo Gap road must be taken as the boundary between the two tracts of land; but to which Center Point and Caddo Gap road did the deeds refer? This evidently was the question of fact submitted to the jury, and the verdict was that the road referred to was the one dividing the northwest quarter southeast quarter into two tracts,

one containing approximately 15 acres, and the other approximately 25 acres. The testimony supports that finding. The testimony on Tedford's behalf is to the effect that there was such a road when Epperson executed the deed to Pope, and this is the deed through which the Lumber Company derives its title. All the deeds in the Lumber Company's chain of title employed the description appearing in the deed to Pope, and there is no fact or circumstance in evidence which indicates that any one, except the Lumber Company claimed to have purchased any acreage except that owned by his own immediate grantor.

The testimony is to the effect that the old road, with reference to which the lands were conveyed in the deeds from which the respective parties derive title, has, through non-use and lapse of time, become indefinite as to its exact location, although it was sufficiently shown that there was such a road.

The jury returned the following verdict: "We, the jury, find for the plaintiff, (Tedford), and give him title and possession to the lands in controversy and damages to the amount of $15." The damages assessed relate to certain timber which Tedford had cut, but which the Lumber Company refused to permit him to remove.

The judgment from which is this appeal recites that after the verdict had been returned, but before it was accepted, objection was made to the form thereof, on the ground that it did not definitely describe the property in controversy, because it was impossible, under the testimony, to definitely describe the boundary line between the property of Tedford and that of the Lumber Company, which is to say that the exact location of the old road could not be determined.

Notwithstanding this objection, a judgment was rendered, in which it was found and adjudged that "W. A. Tedford is the owner of and entitled to the possession of all of the NW¼ of SE¼ of section 29, township 7, south, range 27 west, except fifteen (15) acres of even width lying on the west side thereof, and which lay west of the Center Point and New Hope road, as it

ran in 1890 and as conveyed by H. P. Epperson to O. T. Pope on April 9, 1890.'' The judgment referred to this road as the Center Point and New Hope road; but the undisputed testimony is to the effect that the road was known interchangeably by that name and by the name of Center Point and Caddo Gap road.

It may be conceded that the effect of this judgment will not be to give the Lumber Company the exact 15 acres to which it has title, for the reason that the road was not shown to be a straight line; but under the verdict of the jury it does justice between the parties. The Lumber Company bought and owned only 15 acres, and the judgment gives it 15 acres. The testimony shows that all the land involved is of equal value, all being timbered land, and equally well timbered. As a practical matter, nothing else could be done, unless, indeed, the Lumber Company is given land it did not buy and does not own. If absolute precision is required in this and similar cases, injustice would frequently result, and would result in the instant case. *Russell* v. *Webb*, 96 Ark. 190, 131 S. W. 456; *Wilson-Ward Co.* v. *Fleeman*, 169 Ark. 88, 272 S. W. 853.

The judgment in the instant case, under the facts submitted to the jury, does substantial justice, and it will, therefore, be affirmed.