STALLCUP *v.* STEVENS.

5-1965        **329 S. W. 2d 184**

Opinion delivered November 30, 1959.

*Douglas Bradley,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

JIM JOHNSON, Associate Justice. This case involves a boundary line dispute.

Suit was brought in Chancery Court by appellee, Ralph J. Stevens, seeking to enjoin appellant, F. P. Stallcup, from interfering with fences located between the lands of the parties. A temporary restraining order was issued by the court against F. P. Stallcup enjoining him from molesting the fences in question. Appellant, F. P. Stallcup was joined in his answer and cross-complaint by appellants James F. Stallcup and Maxine Stallcup Gregg, as interveners who own an interest in the Stallcup property. The answer and cross-complaint

allege *inter alia* that the metes and bounds description contained in appellants' deed was a mutual mistake of fact both as to course and distance by the parties at the time. In addition to a prayer for dismissal, appellants also prayed that the metes and bounds description of their deed be reformed to establish the west line of their property to be a straight line between two corners alleged to be known, rather than follow the metes and bounds description contained in their deed; further praying that title to the property be quieted in them.

Appellee thereupon answered the cross-complaint and amended his complaint denying *inter alia* that the west line of the metes and bounds description contained in appellants' deed was in error; denying that there was any mistake and denying that appellants were entitled to have their deed reformed. They alleged, in effect, that fences divided the land of appellee and the land of appellant at all times for more than 30 years and that there had been an adverse holding by appellee, and those under whom he claimed, of the land up to the division fence during this entire period of time. The amendment to the complaint prayed for damages caused by acts committed by appellant against the property of appellee.

Upon final hearing the learned Chancellor found as follows:

"(1) That the intervention and cross-complaint of F. P. Stallcup, James T. Stallcup and Maxine Stallcup Gregg be and the same is hereby dismissed for want of equity;

"(2) That the temporary restraining orders heretofore rendered be and are hereby made permanent;

"(3) That the present fence is the true and proper boundary line between the lands of the plaintiff and the defendant and cross-complainants; that the defendant, F. P. Stallcup, should be and is permanently enjoined and restrained from interfering with or damaging any of the fences between said lands. He is also enjoined and restrained from interfering with or damaging any of the

fences on the lands of plaintiff along Greensboro Road or wheresoever situated;

"(4) That plaintiff have and recover of and from the defendant, F. P. Stallcup, judgment in the sum of $150 as damages sustained by plaintiff as a result of cutting fences, cutting timber and damaging land; and

"(5) The defendant, and cross-complainants pay all costs hereof."

From the above decree comes this appeal.

This being a suit in Chancery, on trial *de novo* we find the facts to be as follows:

About seventy-five years ago, F. P. Stallcup's father received a deed to land described by metes and bounds, and which was referred to as containing thirty-eight acres. The lines are all definite except that the West metes and bounds line running to the South part of the land reaches a point which is less than the thirty-five rods called for in the deed from the Southeast corner of the quarter section. The land is described as follows:

"Beginning at the northeast corner of the northwest quarter of Section 9 in township 14 north, range 4 east, and running west forty (40) rods, thence south nine degrees east eighty (80) rods, thence south nineteen (19) degrees east twenty (20) rods, thence south sixty rods to a stake with white oak 14 inches in diameter east 5 links, thence east thirty-five (35) rods to the southeast corner of the said northwest quarter of Section 9, thence north one hundred and sixty rods (160) rods to the beginning corner, containing thirty-eight acres, *more or less.*" (Emphasis supplied.)

Complaint filed by appellee sets out as an exhibit a decree awarding dower which was rendered in the same court on August 21, 1929. This decree established the line of the land which was set out by commissioners and awarded by the Court to Zilphia Dorton, (widow of Brady Dorton) the predecessor in title to appellee. The proof in this case shows that the line established by that

decree was based on fences that were then in existence and which have been recognized as separating the lands of the parties for all these years.

Testimony relative to the fence is as follows:

Ralph Stevens, appellee, testified that of his own knowledge a fence south of the Greensboro Road had been in the same location as now as far back as he can recollect. There has never been any occupancy or use of any land west of the fence and south of the Greensboro Road in the last twenty years by anyone other than appellee and his brother.

[Before Jonesboro became an important settlement in Craighead County, a community called Greensboro northeast of Jonesboro, at the Greene County line, was the commercial metropolis of the county. A road connecting Jonesboro and Greensboro is one of the historical landmarks of the county. This road crosses the south portion of the land here involved.]

Ralph Stevens further testified that there has been a fence north of the road between the land claimed by Mr. Stallcup and the land that he claimed in the same location as now more than thirty years. Neither Mr. Stallcup nor any of his relatives during the last thirty years have ever had any use of any of the land west of the fence either north or south of the road. Mr. Stallcup destroyed 600 or 700 feet of the fence. That's why there are some comparatively new fence posts north of Greensboro Road. ''I put the fence on the survey line. It corresponded with where the fence had been . . . The old fence had been there longer than I can remember, at least forty years.''

C. P. Chesier testified that he has lived in the area since 1898. Fences have been in the same location as now all that time. When he first became acquainted with the land, Brady Dorton was using and claiming the land west of the present fence location. He was one of the commissioners to assign dower to Mrs. Brady Dorton (Zilphia Dorton).

Alba Chesier testified there has been a fence in the present location to his recollection twenty-five or thirty years. He is forty-one years old. During 1958 he pastured the part north of the road. He gave it up about September 1; would have used it a month and a half longer at $1.00 a head; stopped using it on account of the fence being torn up and his stock got out. He had seven and eight head there. In building the fence in 1952 or '53 they followed the survey.

James Yates testified: There has been no change in the location of the fence between the Stevens land and the Stallcup land during the twelve years he has been familiar with it. The fence built in 1952 or '53 replaced a fence in the same location. One time Mr. Stallcup cut three or four hundred feet of the fence. It has been cut many times since. "It's been a question to rent it to somebody for pasture because I have to go by and fix the fence all the time." The labor and material in repairing the fence the last two years was probably not over $75.00. Timber has recently been cut in the southeast portion of the Stevens land. It would take about $75.00 to level the ruts out of the land cut by hauling the timber. "On some occasions I saw Mr. Stallcup cut the fence and on some occasions he told me he did."

Appellant, F. P. Stallcup, testified: "The north and south fence south of Greensboro Road was built by me in 1929 and 1930. Ralph Stevens' brother had the land west of the fence terraced. Q. When was the first time that you knew of anyone claiming that particular 100-foot strip adversely to you?" (This is the land immediately west of the fence). "A. Well, it was in 1928 or 1929 when the commissioners was down there. Q. What commissioners? A. The commissioners followed the decree of the Chancery Court in dividing the property belonging to B. L. Dorton. Q. This is part of the same fence that was built in 1953? A. Part of the same fence I was tearing down, yes, sir . . . I paid for the cutting of the trees west of the fence I put up in 1928 or 1929. Q. Were you present in this Court something over a year ago when you were enjoined from interfering with

the north and south fence? A. Yes, sir. Q. You have cut that fence some since then, have you? A. Yes, sir, I have cut the fence. Q. Then you later cut the east and west fence west of the north and south fence? A. Yes, sir.''

As we view this case, appellants claim under a deed made in 1884 to Thomas C. Stallcup, father of appellant, F. P. Stallcup. This deed has definite courses and distances. The only difficulty is that the south line is reached at a point less than 35 rods west of the southeast corner of the quarter section as called for by the deed. Appellants desired the Trial Court to disregard the courses for the west line and to run straight from a point 40 rods west of the northeast corner to a point 35 rods west of the southeast corner. Under the law the Court could not do this because: (1) distances yield to courses; (2) the fence between the parties had been recognized as the line for over 30 years; (3) the statement of acreage was not a covenant; and (4) appellants did not make as parties those essential to reformation of a deed executed more than 70 years ago.

In a suit to reform a deed the grantor in the deed, or, if dead, his heirs, and those claiming under him, are necessary parties. *Oliver* v. *Clifton,* 59 Ark. 187, 26 S. W. 817; *Knight* v. *Glasscock,* 51 Ark. 390, 11 S. W. 580; *Ward* v. *McMath,* 153 Ark. 506, 241 S. W. 3.

It is well settled by the decisions of this Court that, in defining the boundaries of a tract of land, where the descriptions given are uncertain and conflicting, distances yield to courses, and courses to monuments. See: *Joseph* v. *Baker,* 95 Ark. 150, 128 S. W. 864; *Scott* v. *Dunkel Box & Lbr. Co.,* 106 Ark. 83, 152 S. W. 1025; *Dierks Lbr. & Coal Co.* v. *Tedford,* 201 Ark. 789, 146 S. W. 2d 918; *Garrett* v. *Musgrave,* 215 Ark. 835, 223 S. W. 2d 779.

To entitle a party to reform a written instrument upon the ground of mistake, it is essential that the mistake be mutual and common to both parties. *Hicks* v. *Rankin,* 214 Ark. 77, 214 S. W. 2d 490; *Tomlinson* v. *Williams,* 210 Ark. 66, 194 S. W. 2d 197; *McClelland* v.

*McClelland,* 219 Ark. 255, 241 S. W. 2d 264; *Paschal* v. *Swepston,* 120 Ark. 230, 179 S. W. 339.

It must be remembered that the line was determined by commissioners and fixed by the Court August 21, 1929, and appellant, F. P. Stallcup, testified ''the north and south fence, south of Greensboro Road, was built by me in 1929 or 1930.'' He alone knew whether he built the fence before or after the decree awarding dower to Zilphia Dorton. His uncertain statement must be taken most strongly against him, indicating he built the fence after the line was fixed by the decree of 1929. The record reflects that his mother, Iliza Dorton, (daughter of Zilphia Dorton) appellants' predecessor in title, was a party to that proceeding. The record further reflects that he recognized the existence of the decree.

The Chancellor correctly found and established the line between the parties as being where it had been for thirty years and more. See: *McDonald* v. *Roberts,* 177 Ark. 781, 9 S. W. 2d 80; *Buchanan* v. *Roddy,* 171 Ark. 855, 286 S. W. 1020; *Robinson* v. *Gaylord,* 182 Ark. 849, 33 S. W. 2d 710; *Short* v. *Smithy,* 224 Ark. 363, 273 S. W. 2d 393; *Jewel* v. *Shiloh Cemetery Assn.,* 224 Ark. 324, 273 S. W. 2d 19; *Carter* v. *Roberson,* 214 Ark. 750, 217 S. W. 2d 846; particularly see *Seidenstricker* v. *Holtzendorf,* 214 Ark. 644, 217 S. W. 2d 836, a case directly in point and controlling here.

From what we have said above, we therefore find that there was an established line between the lands of appellants and appellee; that appellant, F. P. Stallcup, cut the fence on that line, that he was enjoined from committing such depredations, that he violated the injunction; that in addition to cutting the fence he had timber on appellee's land cut and hauled away and thereby damaged the land. The Chancellor's decree is in all respects hereby affirmed.