KEITH ANDERSON AND MILDRED ANDERSON *v.* ROBERT S. WELBORN

5-6220                                                    492 S.W. 2d 892

Opinion delivered April 16, 1973

*John W. Cloer,* for appellant.

*Van H. Albertson,* for appellee.

CONLEY BYRD, Justice. Appellants Keith Anderson and his wife Mildred Anderson own lands adjoining ap-

pellee Robert S. Welborn in the NE¼ of Sec. 2, T 14 N, R 26 W in Madison County. Welborn and his predecessors in title obtained title by a metes and bounds description which among other things described the property containing 60 acres as "...beginning at the southwest corner of the NE¼ of Sec. 2, thence running east 21 chains to middle of slough at foot of hill south and east of War Eagle Creek, ..." Appellants' deed conveyed the E½ of NE¼ and all of W½ of NE¼ of Sec. 2 except the same metes and bounds description contained in Welborn's deed.

Welborn obtained his title in 1966 and shortly thereafter placed two gates across the ingress and egress road extending east and west across the NE¼. In the summer of 1969, after he had commenced the construction of a low water bridge across War Eagle River, appellants placed a locked gate across the road where it joins with State Highway No. 23. Appellee at that time obtained a temporary injunction to prevent appellants from obstructing his ingress and egress.

Thereafter Welborn brought another action to reform his deed to show that he owned to the middle of the slough at the foot of the only hill some 1647.5 feet from the southwest corner of the NE¼.

Appellants denied all the allegations in both complaints and by way of cross complaint sought damages alleged to have occurred when Welborn caused some trees and brush to be bulldozed from a protective flood dyke surrounding the land belonging to appellants.

Upon a consolidated trial the chancellor, after viewing the premises, denied appellants' cross complaint as being without equity, reformed the deed to go to the middle of the slough at the foot of the hill and found the ingress and egress road to be a public road but gave either or both parties the right to erect gates or cattle guards. For reversal appellants make the numerous contentions hereinafter discussed.

There is proof in the record that Welborn's bulldozer operator pushed the overhanging trees back from the road over the lands belonging to appellants to allow for

a road twenty-five feet in width. The witnesses testifying for appellants stated that the dozer made appellants' lands subject to flooding by pushing the brush and trees from the protective dyke protecting their lands. Witnesses for Welborn denied that any trees or brush were pushed from a dyke constructed by appellants. Mr. Anderson himself admitted that a five inch rain in a forty-four hour period did not flood his lands. Consequently, we cannot say that the chancellor's refusal to award the damages claimed, is contrary to a preponderance of the evidence.

The proof as to the reformation of the deed is more than ample to support the chancellor's reformation. Monuments ordinarily control over courses and distances, *Stallcup* v. *Stevens,* 231 Ark. 317, 329 S.W. 2d 184 (1959). All of the proof here showed only one hill in the area with a slough at the foot thereof. Further, the same error in distance could have easily been demonstrated by running the description backwards.

Appellants also claim the lands by adverse possession and by adverse possession through the payment of taxes on wild and unimproved lands for more than seven years. We cannot say that the chancellor erred in denying either contention. The claim as to actual hostile possession arises out of the cutting of some walnut logs and the hauling of gravel. While there is some proof to the effect that appellants cut some walnut logs in 1951, there is other proof to the effect that he cut only two or three trees and desisted from that after he was contacted by Mrs. Hubbard, one of Welborn's predecessors in title. The proof as to the gravel appears to place the gravel taken as being from the land of appellants.

Neither can we say from the record that the lands involved are all wild and unimproved. The witnesses in testifying, evidently in referring to a map or plat, would testify, "at this point here", but from the cold record it is impossible for us to determine that the area contained in the E½ NE¼ is wild and unimproved. We gather that some of the area involved is cleared and has been farmed in the past. However, it is obviously impossible for us to say that the chancellor erred in ruling against appellants.

There is evidence in the record showing not only that the ingress and egress road was used in general by the public but that it was graded by the County from time to time. Thus the proof is more than sufficient to support the chancellor's finding that it was a public road. However, it appears that so much of the decree as permitted the erection of "gates or cattle guards" as distinguished from "gates and cattle guards" is in error. See *Hatchett v. Currier*, 249 Ark. 829, 461 S.W. 2d 934 (1971), where we held it was error to authorize the erection of gates across a public road without also erecting cattle guards to permit the passage of automobiles or trucks without opening the gates.

As modified the judgment is affirmed.