
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–14–710

| | |
|---|---|
| | Opinion Delivered SEPTEMBER 9, 2015 |
| WILLIAM R. WHITTENBURG<br>APPELLANT | APPEAL FROM THE PRAIRIE COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. CV–10–36] |
| V. | |
| JOHN R. MOODY AND SANDRA O. MOODY | HONORABLE THOMAS M. HUGHES, JUDGE |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

This case involves a boundary-line dispute between appellant William R. Whittenburg and appellees John and Sandra Moody, who own adjoining property in Prairie County. The Moody property consists of fifteen acres and the Whittenburg property, described in his deed as two contiguous 330 x 330 foot tracts consisting of a total of five acres, lies directly to the east of the Moody property. After Mr. Whittenburg had allegedly encroached onto the Moody property and attempted to claim a portion thereof, the Moodys filed a complaint for ejectment, requesting that Mr. Whittenburg be enjoined from entering their property. In Mr. Whittenburg's answer, he raised various defenses including laches and adverse possession.

After a bench trial, the trial court entered an order of ejectment, finding the disputed area to be owned by the Moodys and ordering Mr. Whittenburg to remove himself and his

possessions from the Moody property. Mr. Whittenburg now appeals, and he raises numerous arguments for reversal. We affirm.

The Moodys acquired their property in 1979. Mr. Whittenburg bought his property in a foreclosure sale in March 2008, and it is undisputed that after purchasing the property Mr. Whittenburg began clearing and maintaining up to an old dilapidated fence running approximately north to south. Based on a survey obtained by the Moodys four years earlier in 2004, the Moodys advised Mr. Whittenburg that the old dilapidated fence line (hereinafter referred to as "the old fence line") was on their property and that Mr. Whittenburg was significantly encroaching across the parties' boundary and onto the Moodys' land. Mr. Whittenburg persisted in claiming up to the old fence line, and the Moodys filed their lawsuit in July 2010.

Mr. Moody testified that, at the time they acquired their property in 1979, there were "lots of fence lines, cross fences, and things of that nature." Mr. Moody said that none of the fences had been maintained. After the property was surveyed by David Hamilton in 2004, iron markers and PVC pipes were placed on the corners of the Moody property. According to Mr. Moody, he spoke with appellant's immediate predecessors in title, Mark and Holly Webb, and showed them the 2004 survey line and corner markers during the time the Webbs owned the adjacent land between 2005 and 2007. The 2004 survey line was significantly east of the old fence line. Both Mark Webb and Holly Webb testified that they agreed to the 2004 survey line and never claimed or maintained the disputed property between the 2004 survey line and the old fence line. Also, Mr. Moody stated there is an old metal barn that is

forty-nine feet in length. Approximately forty feet of the old metal barn is located on the Webb/(now)Whittenburg property and approximately nine feet of the metal barn crosses over the 2004 survey line and onto the Moody property.[1]

David Hamilton, a licensed surveyor, testified without objection about the survey he performed in 2004. A copy of the survey was also admitted into evidence without objection.

In determining the location of the boundary between the properties at issue, Mr. Hamilton looked at the property descriptions in the Moodys' 1979 deed as well as the deeds held by Mr. Whittenburg's predecessors in title. While Mr. Hamilton obviously did not look at Mr. Whittenburg's deed at that time in 2004 because Mr. Whittenburg did not yet own the property, Mr. Hamilton asserted that the subsequent Whittenburg deed and the deeds from his predecessors in title contained the same legal descriptions.

On the 2004 survey, Mr. Hamilton denoted the existence of the old fence line. Mr. Hamilton determined that the old fence claimed by Mr. Whittenburg to be the property line was actually fifty-seven feet west of the parties' boundary line on the south side and thirty-four feet west on the north side (the old fence line runs slightly from the northeast to the southwest instead of due north and south). Mr. Hamilton testified that there were numerous other fences on the properties and stated that none of them were in good shape or being maintained. He further stated that the old fence at issue was "pretty derelict" and that

---

[1]While the old metal barn actually straddles the 2004 survey line, and is forty feet on the Whittenburg property and nine feet on the Moody property, neither party requested the trial court to remove the barn or make a finding concerning the ownership of the metal barn. Hence, any issue pertaining to the metal barn, other than the location of the property line, is not a part of this appeal.

SLIP OPINION

there was "about as much of it down as it was up."  Mr. Hamilton also testified that an old metal barn encroached over the Moody property line 9.8 feet on the northern end and 8.6 feet on the southern end. Mr. Hamilton further testified that there was another "small derelict frame building" that also encroached over onto the Moody property. Both buildings are shown on the 2004 survey.

Mr. Whittenburg introduced into evidence three prior deeds of his predecessors in title as well as his own deed.  The initial deed dated 1975 contained a five-acre property description referencing an area 660 feet from north to south and 330 feet from east to west, but with no mention of a fence.  However, the remaining deeds, dated 1985, 1992, and 2008 (appellant's deed), showed the same metes-and-bounds description but indicated that both the north/south and east/west boundary lines of the property followed fences.

On cross-examination, Mr. Hamilton testified that there was no north/south fence on the western border of appellants' property as indicated by the deeds.  He acknowledged the presence of the old fence to the west, which was not upright and was not maintained, but concluded that it was not within a reasonable distance of the described boundary line in the deed of the appellant or the appellant's predecessors in title.

Mr. Whittenburg testified that he believed the old fence line to be the boundary between the parties' properties.  Mr. Whittenburg said that, after buying the property in 2008, he maintained the property between the 2004 survey line up to the old fence line, and he further asserted that he was utilizing a septic tank on the disputed tract.



In this appeal, Mr. Whittenburg's first argument is that the Moodys' ejectment claim was barred by laches. Laches is an equitable doctrine that requires a detrimental change in position by one party and an unreasonable delay by the other party, and its application is a question of fact for the trial court based on the particular circumstances of each case. *Adams v. Howard*, 2014 Ark. App. 328, 436 S.W.3d 473. Mr. Whittenburg argues that he was prejudiced by the Moodys' failure to bring their claim in a timely manner. Mr. Whittenburg asserts that, beginning in 1979 when they bought their property, the Moodys assented to the old fence being the boundary line, and that it was unreasonable for them to wait until 2010 to claim otherwise. Mr. Whittenburg further suggests that, if the Moodys wished to claim to the boundary line as indicated on the 2004 survey, they should have made that claim after the survey was completed. Under this point, Mr. Whittenburg also contends that the old fence line was a boundary line by acquiescence.

We agree with the trial court's determination that laches did not bar the Moodys' claim. Contrary to appellant's argument, there was no evidence that the Moodys ever accepted the old fence line as the boundary between the properties, nor was there any evidence that any of Mr. Whittenburg's predecessors in title maintained the property up to the fence or claimed its possession. In fact, there was testimony by Mr. Whittenburg's immediate predecessors in title, Mark and Holly Webb, that they agreed to the boundary line as shown by the 2004 survey and did not claim the property to the fence line. It was not until Mr. Whittenburg bought the property at the foreclosure sale and began exercising possession of the property between the 2004 survey line and the old fence line that the

Moodys' cause of action for ejectment arose, and the Moodys commenced their lawsuit against Mr. Whittenburg within a couple of years after he persisted in clearing and claiming the disputed land. On these particular facts there was no unreasonable delay by the Moodys and laches does not apply. As for Mr. Whittenburg's claim that the fence line had become a boundary by acquiescence, this defense was not raised below nor was it established by the evidence.

Mr. Whittenburg's next argument is that he should have been entitled to possession to the old fence line based on the rule of construction that natural or artificial monuments prevail over courses and distances. He cites *Dierks Lumber & Coal Company v. Tedford*, 201 Ark. 789, 146 S.W.2d 918 (1941), where the supreme court stated that a call for quantity in a deed must yield to a more definite description by metes and bounds, and that it will be rejected if it is inconsistent with the actual area of the premises if the same is ascertained by known monuments and boundaries. Mr. Whittenburg relies on the property descriptions of each of the two tracts in his deed, which each provide that the respective north-to-south boundary on the west side of his property runs a distance of 330 feet following "a fence." Mr. Whittenburg concludes that the "fence" referenced by his deed is the old fence to which he has cleared, and that this fence is the true property line under the rules of construction.

We have held that we will affirm a trial court's finding of fact with regard to the location of a boundary line unless the finding is clearly erroneous. *Fletcher v. Stewart*, 2015 Ark. App. 105, 456 S.W.3d 378. We hold that there was no clear error in the trial court's finding that the boundary line was that shown on Mr. Hamilton's 2004 survey and not the

6

old fence as claimed by Mr. Whittenburg. Although the property descriptions in appellant's deed refer to the boundary line following "a fence," Mr. Hamilton testified that there was no fence within a reasonable distance of the boundary as described by the courses and distances. The old fence relied on by Mr. Whittenburg was between thirty-four and fifty-seven feet west of the survey line. Mr. Hamilton stated that there were many fences in the area, all of which were derelict, and that it could not be determined which fence was being referenced from the metes-and-bounds description. From his 2004 survey, Mr. Hamilton concluded that appellant's property consisted of two contiguous 330 x 330 foot tracts totaling five acres, which is precisely what was described in appellant's deed, as well as the prior deeds. The trial court determined the parties' property rights based on Mr. Hamilton's 2004 survey, and its resulting finding of the parties' boundary line was not clearly erroneous.

Mr. Whittenburg's third argument is that he should have been awarded the disputed property based on his defense of adverse possession. To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that the possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Morrison v. Carruth*, 2015 Ark. App. 224, 459 S.W.3d 317. Under this point, Mr. Whittenburg claims that he established adverse possession through tacking because the property was fenced and he and his predecessors in title continuously occupied the property to the east side of the fence from the time the Moodys bought their property in 1979. However, the testimony at trial did not establish any adverse claim to the disputed land by any of Mr. Whittenburg's

predecessors, and his immediate predecessors, Mark and Holly Webb, specifically acknowledged that they accepted the 2004 survey line as accurate and did not occupy or clear beyond the 2004 survey line toward the old fence. And because Mr. Whittenburg's own adverse use of the land was well short of the seven-year threshold, we hold that the trial court did not err in denying his claim of adverse possession.

For his fourth argument, Mr. Whittenburg contends that the trial court erred in not allowing the testimony of a more distant predecessor in title, Mrs. Johnson, who allegedly owned appellant's property prior to the Webbs' ownership. Although Mrs. Johnson's name was not provided as a witness in discovery, Mr. Whittenburg asserts that she was a rebuttal witness who could have contradicted Mr. Moody's testimony on several points related to the use of the property. However, Mrs. Johnson's testimony was not proffered at trial, and we have held that when a party fails to make a proffer of testimony, he may not take issue with its exclusion on appeal. *See Abernathy v. Weldon, Williams & Lick, Inc.*, 54 Ark. App. 108, 923 S.W.2d 893 (1996).

Mr. Whittenburg next argues that a survey of real property cannot be used in boundary-line disputes. However, this argument has not been preserved for review because both the 2004 survey prepared by Mr. Hamilton and his testimony regarding his survey were admitted without objection. It is well settled that to preserve a point for appeal, a proper objection must be asserted at the first opportunity. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 310 S.W.3d 239.

Mr. Whittenburg's remaining argument is that the trial judge violated provisions of the Arkansas Code of Judicial Conduct and exhibited bias and prejudice throughout the proceedings. To preserve a claim of judicial bias for review, the appellant must have raised the issue below by objecting or moving for recusal. *McLard v. Smith*, 2014 Ark. App. 272. Because appellant did not claim judicial bias below or request the trial judge's recusal, this point is not preserved either.

Having reviewed the record and the points presented by Mr. Whittenburg in this appeal, we have concluded that no error was committed below. Therefore, the order of the trial court is affirmed.[2]

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*William R. Whittenburg*, pro se appellant.

*Robert M. Abney, P.A.* by: *Robert M. Abney*, for appellees.

---

[2]After this case was submitted for decision by this court, Mr. Whittenburg filed a motion for supersedeas wherein he requested a stay on the judgment. Because we are affirming the judgment, Mr. Whittenburg's motion is moot.

SLIP OPINION