BARHAM *v.* GATTUSO.

4-9090                                        227 S. W. 2d 151

Opinion delivered February 20, 1950.

Rehearing denied March 20, 1950.

*James E. Hyatt, Jr.,* and *Marcus Evrard,* for appellant.

*T. J. Crowder,* for appellee.

GEORGE ROSE SMITH, J. This case involves the boundary line between the north half and the south half

of an improved lot in the city of Osceola. The question is whether the boundary should be fixed along the center line of the lot or along a partition that is 3.4 feet north of the center line.

The appellant, as plaintiff, brought the action against Frank Gattuso and his tenant. Gattuso died before trial, and the cause was revived against his heirs, the appellees. The trial court fixed the boundary in accordance with the partition, which resulted in awarding the disputed 3.4-foot strip to the appellees, who own the south half of the lot.

Gattuso was formerly the owner of the entire lot in question. At some time before July 24, 1939, he erected a small building on the southern part of the lot, and a little later he added a room at the north end of the building. A door was cut in the partition that separates the original building from the annex. Gattuso operated a restaurant in the entire building, using the south part for white patrons and the annex for colored patrons.

On July 24, 1939, Gattuso sold the north half of the lot to Frank Williams, who on the same day conveyed an undivided half interest therein to the appellant. At that time none of the parties seem to have known whether the partition between the two sections of the restaurant was exactly on the center line of the lot, though the appellant testified that he supposed it was. Gattuso did not surrender possession of any part of the restaurant building after the sale in 1939; instead, he continued to occupy the north half of the lot as a tenant of appellant and Williams. A letter that constituted an informal lease referred to that part of the building "located on the north half" of the lot as being the property rented to Gattuso.

In May of 1945 the appellant bought Williams' undivided half interest in the north half of the lot. On July 16 appellant notified Gattuso that the lease would be terminated on July 18. Gattuso objected to being evicted on such short notice, and it was then agreed that

he would surrender possession on August 17, which he did.

This suit was filed by appellant a week later, on August 24, 1945. The verified complaint alleged that the partition was actually on the plaintiff's half of the property. It was further alleged that before filing the suit the plaintiff had gone upon the property with a workman to move the partition to the correct boundary line. Gattuso resisted this proposal and countered by asserting that the true line was really three feet north of the partition. Gattuso and his tenant, according to the complaint, entered the room north of the partition and piled boxes along the wall as a means of asserting ownership to the line claimed by Gattuso. The plaintiff obtained a temporary order requiring Gattuso and his tenant to remove these boxes and to refrain from entering the north room during the pendency of the suit.

At the trial the appellant developed his proof about as we have narrated the facts, except that he did not testify about having gone on the lot with the intention of moving the partition southward. Instead, he stated that the north room was vacant for about thirty days after Gattuso moved out on August 17 and that Gattuso then began this controversy by piling the boxes along the north side of the partition. In this respect we cannot accept the appellant's recollection of the facts. The suit was filed on August 24; so thirty days could not have elapsed after Gattuso moved out on August 17. Further, the appellant had employed a surveyor to determine the true boundary, and the surveyor's notes show that the survey was made on July 18 and 20. It is evident that the period of thirty days was between the survey and the beginning of the dispute. Since the appellant verified his complaint on August 24, when the events were fresh in his memory, we accept his original allegation that he began the controversy by attempting to move the partition.

The preponderance of the testimony shows that the partition is actually 3.4 feet north of the true center line. Of the three surveyors who testified, one fixed the line as being 3.4 feet south of the partition and another as

"more than three feet" south of it. Their testimony outweighs that of the third surveyor, who did not connect his survey with established monuments. The chancellor held, however, that by acquiescence the parties had established the partition as the boundary.

The appellees make two contentions to support the decree of the trial court. First, it is asserted that adjoining landowners may settle a boundary dispute by an oral agreement followed by possession in accordance therewith. *Payne* v. *McBride,* 96 Ark. 168, 131 S. W. 463, Ann. Cas. 1912B, 661. But the difficulty here is that there is no evidence whatever to show that the parties agreed upon the partition as a boundary. Appellant testified that he supposed the partition was on the center line, but it is not shown that his supposition was communicated to Gattuso, shared by Gattuso, or acted on in any way. On the contrary, when the dispute arose Gattuso took possession to a line three feet north of the partition and held that possession until this suit was brought.

Second, it is contended that the parties have by their conduct established the partition as the boundary. Neither the deeds nor the lease referred in any way to the partition; the land was described simply as the north half of the lot. In this respect the case differs from *McCall* v. *Owen,* 212 Ark. 984, 208 S. W. 2d 463, where the deeds referred to a fence that was not actually on the true line. We held that the grantees were bound by this reference; but the rule is different when the conveyance uses only a legal description, and it is later found that the fence or other monument is not accurately placed. *Buckley* v. *Gadsby,* 51 Cal. App. 289, 196 Pac. 908; *Trout* v. *Grubbs,* (Tex. Civ. App.) 1 S. W. 2d 950. In the latter situation the case is like any other in which adjoining landowners, through ignorance rather than by agreement, recognize an erroneous common boundary. Possession must then be adverse and must continue for the statutory period of seven years in order to ripen into title. *Harris* v. *F. B. Mooney, Inc.,* 211 Ark. 61, 199 S. W. 2d 319. This suit was brought within less than seven years after

Gattuso sold the north half of the lot; so title by acquiescence cannot have been acquired.

The appellant asserts a claim for damages that have accrued while he has been deprived of possession. As to the period before Gattuso's death the claim has been waived. Upon Gattuso's death the claim became a demand against his estate, but the appellant revived the action against the heirs only and stated in his petition for revivor that Gattuso's administrator was not a necessary or proper party. The evidence is not sufficient to enable us to assess the remaining damages, especially as to the period following the trial below. We accordingly reverse the decree and remand the cause for the entry of a decree in accordance with this opinion and for the allowance of such damages as may be proved at another hearing.