CLEMENTS *v*. COX.

5-1889                                                    327 S. W. 2d 83

Opinion delivered September 14, 1959

*Bert B. Larey,* for appellant.

*Charles C. Wine,* for appellee.

CARLETON HARRIS, Chief Justice. On September 22, 1956, appellees, W. M. Cox and wife, Ambus J. Cox and wife, James E. Cox and wife, and Rabb Spence and wife, instituted suit against appellants, J. H. Clements and wife, alleging that appellees were the owners and in possession of certain lands in Miller County, having acquired title to same by warranty deed of September 2, 1948, from J. R. Bush and wife; that appellants had constructed fencing upon a portion of such lands, containing approximately 25.70 acres, in an apparent attempt to make claim to that portion of the land. The Complaint prayed that Clements be directed to remove the fencing, or that they (appellees) be allowed to do so, and that title to the property here in dispute be vested absolutely in appellees. The Clements were non-residents of this state, and constructive service was obtained. On November 1, 1956, the court entered a default decree granting the relief sought in the Complaint, by vesting and quieting title in appellees, and

authorizing appellees to remove the fences. On November 26th, Clements and wife filed a motion to set aside the decree, alleging that they had been constructively summoned by the publication of a warning order, but received no notice from the attorney *ad litem* appointed to apprise them of the pendency of the suit, and accordingly did not know that the suit had been instituted. They alleged a meritorious defense, *viz.*, that the Clements and Bush had agreed upon a boundary line in 1944; that several fences were built, but washed away, and that Clements constructed the last fence more than four years before appellees purchased the property from Bush; that Bush had at all times recognized the agreed boundary line. A hearing was conducted on December 4, 1957, with the respective parties presenting their evidence. The court found that the Clements failed to sustain their contention of an agreed boundary line, overruled the motion to vacate, and confirmed the decree of November 1, 1956. From this action of the court, appellants bring this appeal.

Two tracts of land are involved, and the trial court summarized the subject matter of the dispute as follows:

"* * * the Court finds that there were 18 acres on the west side of the plaintiffs' land, the defendants' boundary line being on the east side and the plaintiffs' land line being on the west side of the 18 acres involved in this controversy, said line running north and south; that there were 7.70 acres involved on the north side of the plaintiffs' land, and the defendants' line being on the south side of said acreage and the plaintiffs' upon the north side; that plaintiffs had a survey made of their land line and their theory and contention in the case was that this was the correct land line between plaintiffs' and defendants' adjacent lands; * * * That the defendants' sole defense in this case is on the theory that they had an agreement with Mr. J. R. Bush who is the predecessor in title to this land sold to Mr. Cox in 1948; that the boundary lines between their lands were agreed upon, and they obeyed and respected those boundary lines after said agreement was entered into: * * *."

The decision in this litigation does not hinge upon a point of law, it being recognized that this Court has, on numerous occasions, held that the owners of adjoining lands may, by parol agreement, fix a boundary line that will bind them and their grantees. *Payne* v. *McBride*, 96 Ark. 168, 131 S. W. 463. *Furlow* v. *Dunn, Admx.*, 201 Ark. 23, 144 S. W. 2d 31. The sole question here, rather, is whether appellants established that such an agreement had been reached. J. R. Bush died in 1952, and no witness, with the exception of appellant, J. H. Clements, testified to any agreement between Clements and Bush. The witnesses offered by appellants testified relative to old blazes and marks, and some testified to an old fence on the north. But we agree with the Chancellor that their testimony was rather indefinite and uncertain, which is not surprising, in view of the fact that they were testifying about facts occurring many years before. Probably the strongest witness offered by appellants was Mr. Wilbur Martin, who testified that Bush and "his son or step-son" showed him a line which was blazed at the time. From his testimony:

"Q. Will you tell the Court whether or not Mr. Clements has built the fence back on the boundary lines that were shown to you?

A. On this fence going east here, *the best I can tell*.* Now, on this, there wasn't any fence going north at that time, but there was a blazed line *supposed to be the line there*.*"

This evidence, of course, is far from definite, but were it otherwise, it would still constitute only a circumstance to support appellants' claim. We would certainly be unwilling to say that this testimony, or that of the other witnesses, established an agreed boundary line, and we also concur with the Chancellor's finding:

"That the record does not convincingly reflect that there was ever an agreement entered into upon the fence as the boundary line, * * *."

---

*Emphasis supplied.

The evidence is uncontradicted that appellees have paid the taxes on the land each year since it was purchased in 1948 from Bush, and that Cox sold timber on the basis of the description set out in the deed; appellees' witnesses testified that they had never heard of any agreed boundary line; admittedly the deed itself does not contain any provision that the land purchased was other than that contained in the description, nor does the record reflect that appellees had any notice of appellants' claim of an agreed boundary line at the time they purchased the property.

As stated by the trial court: "Therefore, when all of the testimony and the facts and circumstances are taken into consideration in this case, the Court is unable to say that the defendants have sustained their motion by preponderance of the testimony, * * *." We are in full accord. The decree of the Chancery Court is accordingly affirmed.