Webb *v.* Miller.

5-2903                                         365 S. W. 2d 450

Opinion delivered March 11, 1963.

*Paul Jameson* and *O. E. Williams,* for appellant.

No brief filed for appellee.

Carleton Harris, Chief Justice. Appellants, Virgil Webb and wife, Wilma, instituted their complaint against Albert J. Miller and wife, Grace wherein it was alleged that appellees had wrongfully entered upon appellants' property (the west 17.8 feet thereof) and had dug holes, destroyed surveyor's markers, piled fencing materials on the premises, and deprived appellants of the use and enjoyment of their land. It was further asserted that said unlawful acts would be continued; that the appellants would sustain irreparable damage unless appellees were enjoined, and a mandatory injunction was sought to prohibit interference with appellants' possession, and to require appellees to remove a fence which the Webbs contended was located on their premises. Appellees answered with a general denial, and further asserted,

"that a fence existed between plaintiffs and defendants for more than seven years and that these defendants have occupied and claim said lands for more than seven years; that the line fence between the parties was existing at the time plaintiffs purchased their property and that the plaintiffs are now estopped to claim any lands belonging to these defendants or to claim that

the fence is not the line; that uncertainty as to the property lines existed between defendants and plaintiffs' predecessor in title and said latter parties agreed upon the boundaries.''

On trial, the court dismissed the complaint for want of equity, and from the decree so entered, appellants bring this appeal.

The record reflects that Miller and wife purchased lands, which included the property here in question, in April, 1956. Thereafter, in October, 1959, Miller and wife conveyed a portion of the property to A. D. Morris, using a metes and bounds description. The deed called for 200 feet running east and west, and 65 feet running north and south.

In June, 1961, Morris and wife conveyed the land to the Webbs, using the description under which they had acquired such lands from Miller. The dispute in this litigation involves 17.8 feet on the west side of the property. At the time the Millers made their purchase in 1956, a fence was located at the north end of the property which divided the Miller lands from property owned by Jack Elam, to the immediate north.[1] To the south, a fence was erected to separate the land purchased by Morris from other Miller property immediately south of the Morris property line. The fence which is really pertinent to this litigation is to the west, dividing the present Webb property (formerly Morris) from the Miller property on the west, said fence being erected by Miller in 1957, prior to the time of the conveyance to Morris. The Webb and Miller property is bounded on the east by the highway. Appellants contend that they are due to have 200 feet running east and west, as called for by their deed, but the fence erected on the west by Miller, running north and south, cuts their east and west footage to slightly over 182 feet.

Don Kemp, engineer and surveyor, testified on behalf of appellants. He used the description in the deed from Morris to Webb in making the survey, and intro-

---

[1] This fence was subsequently replaced by Morris after he purchased the land.

duced a plat, based on the results of such survey. This plat sustains the position taken by Webb, since it shows that Webb's east and west line extends 17.8 feet west of the fence erected by Miller. No surveyor testified on behalf of appellees. Miller testified that he had previously had a survey made relative to the north and south property lines, but the west line was accepted as a proper line by Morris: "That was accepted as a line because that line was there before Mr. Morris and I made any deal. Had been established by me, and Mr. Morris accepted that as a line." The witness testified that he owned the area west of the fence: "There is 410 feet by 210 feet back there." He stated that before he erected the west line fence, he "measured from the edge of the highway back to where we put the fence and established a 200 foot line back there and put it." In explaining the difference between the fence location and the property line presently claimed by the Webbs, the witness said, "There's a part of this Webb property in the highway, as there is with mine, part of it is in the highway." He testified that in measuring the 200 feet west, "We had a surveyor's marking[2] to go by, as far as east and west is concerned." However, he did not admit that Webb was entitled to 200 feet. Miller stated that he had gotten a Mr. Shreve to make a survey, "and he started to survey and he come out with the wrong answer and he quit." He further said that after the sale to Morris, he and the latter measured 65 feet, north and south, but Morris had nothing to do with measuring the 200 feet east and west.

A. D. Morris, who had purchased from the Millers, and subsequently conveyed the same land to the Webbs, testified that Miller told him that the west fence was the west line of the property; he verified Miller's statement that they measured 65 feet from north to south, but that no measurement was taken of the supposed 200 feet running east and west. The witness testified that he never did question the footage from east to west, and that no difficulty arose between him and Miller. He stated that

[2] This statement had reference to a survey made about 3 years previously at a time when Miller was endeavoring to establish his north property line. He measured from a stake which the surveyor had set out in establishing the north line.

under the deed he was supposed to get "200 x 65. I was well satisfied with it myself. I never did question it or try to find out." Further, from the evidence:

"Q. What was the statement, if any, between yourself and Miller as to the boundaries of your property, particularly the west line of your property?

A. Just the west fence was the boundary line, the property line, and I—

Q. How do you know?

A. I say the west fence, I took it as the line, and I told him I would put the upper chain-link fence on the north if he wanted to put one on the south and we would have it all fenced in, and he said he would. So, I told the gentleman from Springdale and that's what happened. And I took the fences as the line, now, but have it surveyed and established, I never did do it and had nothing to do with that whatever. That's the way I bought the place and the way I sold it.

We are of the opinion that, under our cases, this testimony does not establish an agreed boundary line. In *Clements* v. *Cox*, 230 Ark. 818, 327 S. W. 2d 83, this court said:

" * * * appellees' witnesses testified that they had never heard of any agreed boundary line; admittedly the deed itself does not contain any provision that the land purchased was other than that contained in the description, nor does the record reflect that appellees had any notice of appellants' claim of an agreed boundary line at the time they purchased the property."

In *Brown Paper Mill Co., Inc.* v. *Warnix*, 222 Ark. 417, 259 S. W. 2d 495, we stated,

"We agree with the chancellor's conclusion that the mere existence of the fence did not affect the title to the area in controversy. The record does not show that there was ever an agreement upon the fence as the boundary line. A few witnesses testified that they understood the location of the fence to represent the line, but their belief was based merely on the fact that the fence was there and hence added nothing to the physical facts."

*In Barham* v. *Gattuso,* 216 Ark. 690, 227 S. W. 2d 151, likewise

"Second, it is contended that the parties have by their conduct established the partition as the boundary. Neither the deeds nor the lease referred in any way to the partition; the land was described simply as the north half of the lot. In this respect the case differs from *McCall* v. *Owen,* 212 Ark. 984, 208 S. W. 2d 463, where the deeds referred to a fence that was not actually on the true line. We held that the grantees were bound by this reference; but the rule is different when the conveyance uses only a legal description, and it is later found that the fence or other monument is not accurately placed. (Citing cases.) In the latter situation the case is like any other in which adjoining landowners, through ignorance rather than by agreement, recognize an erroneous common boundary. Possession must then be adverse and must continue for the statutory period of seven years in order to ripen into title."

Finally, as applicable in this case, in *Carney* v. *Dunn,* 221 Ark. 223, 252 S. W. 2d 827, we said:

"We conclude that when all the evidence is considered, the finding of the trial court that appellants had failed to establish the hedge as the agreed boundary line was not against the preponderance thereof. While Mr. LePlant, Sr., owned both lots, he clearly had the right to establish the true line between them to be the center line as platted and to so convey them under the recorded plat description without exceptions. This we hold the preponderance of the testimony shows he and his heirs did. The parties were bound by the descriptions in their deeds."

Let us apply these holdings to the facts before us. There is no evidence that Mr. and Mrs. Webb had ever heard of any agreed boundary line, nor that they had any notice of Miller's claim of such an agreement, and, of course, the deed does not contain any provision that the land purchased was other than contained in the description. As pointed out in *Brown Paper Mill,* the mere existence of the fence did not affect the title to the

area in controversy. The Webbs testified that they saw the fence, but thought nothing about it, considering that they were getting 200 feet. As stated by Mr. Webb, "I was more or less going by what Mr. A. D. Morris told me. Mr. Morris never showed us the property." Morris, admittedly, never did show the land to the appellants. "I just told them I had a deed that was 65 x 200 and I sold them what I had, see. In other words, I give them a deed to the—the same kind of deed that I had." Nor did Morris ever testify that there was any dispute between him and Miller as to the proper line.

Actually, it appears, to use the language in *Barham* v. *Gattuso, supra,* that Morris, "through ignorance rather than by agreement" recognized an erroneous boundary. As hereinbefore set out, he simply, upon Miller's stating that the fence constituted the boundary, "took it as the line." In other words, Morris merely "acquiesced." Of course, acquiescence, for the statutory period, will ordinarily confirm a boundary line. In *Seidenstricker* v. *Holtzendorff,* 214 Ark. 644, 217 S. W. 2d 836, we said,

"Acquiescence, by owners of adjoining lands, in a boundary line, as shown by a division fence, for more than seven years will ordinarily confirm the boundary line as thus located, even though the fence may not be placed on the true line between the tracts."
Here, however, Morris did not purchase the property until 1957; in fact the fence was not even constructed by Miller until 1956, so there could have been no acquiescence for seven years. Let it also be remembered that the Millers, prior to the conveyance to Morris and wife (and the subsequent conveyance to the Webbs) owned the entire tract, and could, after a proper survey, have conveyed the intended amount of land to Morris, or, at least, have mentioned the fence in the conveyance. This is all the more reason appellees should be bound by the description in the deed.

Looking at the other allegations in the answer,[3] we find the claim of adverse possession. This claim must

---

[3] Appellees have not filed any brief with this court.

fail for the reason pointed out in the preceeding paragraph.

The answer also alleges that appellants are estopped to claim the footage in question because the fence was in existence at the time they made the purchase. Likewise, there is no merit in this contention, as we have previously pointed out that no one advised the Webbs that the fence supposedly marked an agreed boundary line, or that they were not entitled to actually receive all the land called for by their deed. The record does not reflect that they had notice of any kind or nature that such a contention would be made. For the reasons herein set out, the decree is reversed, and the cause is remanded to the Washington Chancery Court with directions to enter a decree not inconsistent with this opinon.