SUNRAY DX OIL COMPANY ET AL *v.* JOHN E. MAHAFFEY & ASSOCIATES, INC.

5-5723                                   474 S.W. 2d 119

Opinion delivered December 20, 1971
[Rehearing denied January 17, 1972.]

*Pearson & Pearson* and *Shaw & Ledbetter,* for appellants.

*Jones & Segers,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, John E. Mahaffey and Associates, Inc., hereafter called Mahaffey, instituted suit in the Washington Chancery Court on June 25, 1969, against Sunray Oil Company DX Division, one of the appellants herein, and by such complaint and subsequent amendments filed, asserted that Maurice A. Finney and wife, Louise McDonald Finney, were the owners of real estate west of appellees' property, and that appellant, Sunray, had leased the Finney and Harper lands. It was alleged that the lessee was encroaching upon the Mahaffey property by some 8.3 feet on the south and 7.3 feet on the north, and the prayer was that the defendants would be enjoined from further encroachments, required to remove present encroachments, and fair rental was sought for the property occupied by such encroachments prior to removal. Appellant answered with a general denial, and the appellants Finney and Harper answered, admitting ownership of the premises leased by Sunray, denying that appellees were entitled to any relief, and further stating that if such an encroachment existed, it was without any knowledge on the part of the owners. A cross-complaint was filed by these appellants against Sunray praying that if appellee recovered a judgment against the Finneys and Harper for rentals, or was granted a mandatory injunction which occasioned expense to these appellants, that they be given judgment against Sunray for the amount of any such judgment or expenses incurred. Sunray answered this cross-complaint with a general denial, and subsequently filed an amendment to the answer to Mahaffey's complaint asserting adverse possession; the Finneys and Harper likewise amended their answer pleading adverse possession, and an agreed boundary line between appellants and appellee was also pleaded. On trial, the court resolved the issues in favor of appellee as against all appellants, and in favor of appellants, the Finneys and Harper on their cross-complaint against Sunray. The decree required Sunray

to remove the encroachment placed on the property, a retaining wall, and specifically found that the true boundary line between the two properties was that alleged in the complaint of appellee; that the encroachment extended to the east onto the Mahaffey property 7.3 feet on the north and 8.3 feet on the south. No amount was given appellee for damages. From the decree so entered, appellants bring this appeal. For reversal, it is asserted that the trial court erred in its finding that the appellees had established the true location of the common lot line, and further the court erred in holding that appellants did not sustain their burden of proof relative to an agreed boundary.[1] We proceed to a discussion of these points in the order listed.

Mr. Mahaffey, in April, 1967, purchased the property lying east of, and adjoining, the property owned by appellants and after acquiring the lot, surveyed the land including lots on both sides of the property purchased. His survey, which was made in accordance with the legal description contained in the deed conveying to him, revealed that there was a concrete retaining wall encroaching on his lot by some 7.3 feet on the north end and some 8.3 feet on the south.[2] The description in the deed received by Mahaffey had as a beginning a point 104 feet east of "the NW corner of Block 30 to the Masonic Addition to the City of Fayetteville", and this was the point used by Mahaffey, a registered engineer himself, in making the survey. He testified that though the original plat of Masonic Addition was dim and somewhat indefinite, based upon that plat and the deeds and records of the adjoining properties (on each side), he felt that the proper starting point had been used. The property leased by Sunray gives the legal description, and then, in parentheses refers to Appellants' eastern boundary as "Jackson's lot", this lot being the property that Mahaffey purchased in 1967. The legal descriptions of both the Sunray lot and the lot east of appellee's land (McDonald's lot) had starting points tied to the quarter section line and appellee's survey of

[1]It was urged below by appellants that they had established title by adverse possession, but that contention was abandoned.

[2]The conveyance to Mahaffey called for frontage of 57 feet and his survey revealed 49.7 feet.

these lots conformed to the legal description of all three properties. Mahaffey stated that the beginning point in the description of appellants' property which was "15 feet east of the quarter section line" and the beginning point of his description, which is "the NW corner of Block 30" are the same points expressed differently.

The conclusions reached by Mahaffey are disputed by Don Kemp, not an engineer, but a registered land surveyor, who had trained under Mahaffey, and who testified on behalf of appellants. Kemp made his first survey in 1964, when the retaining wall was built by appellants, and in fact, the wall was placed in its location (as the boundary line) on the basis of this survey.

Mr. Kemp's testimony is confusing as to whether he used the legal description furnished by Sunray, or another legal description he obtained by checking the courthouse records, or, a composite of both, though it appears that the last is nearer correct. Taking this description, Kemp arrived at a point on the ground which he considered to be the NW corner of Block 30. He considered this point to be the same as Mahaffey's "apparent NW corner of Block 30 of Masonic Addition".

Using his description, Kemp started at the SW corner of the quarter section and proceeded to run the lines out. He testified that he went 690 feet north of the SW corner and then went east 15 feet for the beginning point. He then ran 104 feet east according to the description and came to a point on the ground which is some 7.3 feet west of where he ultimately located the eastern boundary of the property. Noticing a difference in the boundary as located on the ground, and the way it is surveyed, Kemp checked extensively on the boundary lines throughout the entire block. Surveying the block, he decided there was a persistent 7 foot error between the apparent physical boundaries and the boundaries called for in the legal descriptions, with the exception of the last two properties on the block. At the NE corner of the block, the witness testified that he found an iron pin monument. Starting with this monument and surveying back to the Sunray property on the NW corner of the block, Kemp concluded that the disputed boundary

line was 7.3 feet east of the point he had arrived at prior to conducting this survey of the entire block. It was this boundary that the witness considered as being the true boundary.[3] The testimony reveals a rather unusual circumstance. The witness testified that, when requested to make the survey, Sunray furnished him with a legal description of the property being leased in order to accomplish that assignment. Though he decided that the description was incorrect, and went beyond his instructions to the extent of locating the descriptions of the property all along the block to ascertain if those persons had all the property coming to them, and though furnishing Sunray with a plat that did not coincide with the legal description that he had been furnished by that appellant—Kemp never mentioned the matter to his employer (Sunray).

. Kemp admitted that if he had followed the legal description of appellants' property, his survey would have come out exactly the same as the Mahaffey survey. He also admitted that if he had begun at the beginning point described in appellants' legal description, and proceeded east 104 feet, he would have arrived at a point approximately 7.3 feet short of where he subsequently put the pins. This point marked the boundary line surveyed by Mahaffey.

The transcript reveals the following questions propounded by the court and the answers of Kemp.

"Q. Now, I gather from your testimony, that in your judgment as a professional and experienced engineer and surveyor, the actual physical location on the ground, that the north-

---

[3]On Kemp's plat of the 1964 survey, purportedly depicting the existing physical boundaries at that time, the northeastern corner of appellants' property was shown to be 119 feet east of the quarter section line on a row of trees. However, on a plat prepared by Kemp per another survey on the ground in August, 1970, when one refers to the red lines allegedly depicting physical boundaries, this being based upon the 1964 survey, it is observed that the eastern boundary as located in the original survey is actually 126.3 feet east of the quarter section line, or, 7.3 feet east of the measurement shown in the 1964 plat. Apparently the 1964 plat shows erroneous measurements to the boundary.

west corner of Block 30 in the Masonic Addition is sort of up in the air?

A. That's correct.

Q. You are not really sure where it is and are not really sure whether its location can really be determined, is that correct?

A. That's correct."

It is thus apparent that Kemp was not completely confident of his survey.

Appellant argues that, since appellee instituted the suit, it must prevail upon the strength of its own title, and not the weakness of the title of its adversary. That is true, but we agree with the trial court that Mahaffey established title, though perhaps not to a mathematical certainty. Some facts are clear. The correctness of Mahaffey's survey as to the location of the boundaries according to the legal description is undisputed. Mahaffey followed the legal description of the appellants' property, and the legal description of the property adjoining him on the east, for reference in establishing what, in his opinion, was the location of the NW corner of Block 30 of the Masonic Addition, the point to which the legal description of his property is tied. The surveys of both properties adjoining Mahaffey's lot were based upon legal descriptions tied to a fixed monument—the quarter section corner. The fixed location of this quarter section corner controls courses and distances taken from the corner. Mahaffey used these legal descriptions tied to the fixed corner for references in determining the boundaries of his property. On the other hand, Kemp based his conclusion as to the location of the disputed boundary upon the terminal point of a survey originating at the NE corner of the block and measuring the frontage of all the lots between that corner and the disputed boundary. As to the lots of other persons not involved in this litigation, Kemp testified that he acquired the information used in his survey of these properties from courthouse records. This undoubtedly included the legal descriptions in the deeds.

It is also contended that appellants acquired title by virtue of an agreed boundary line. We agree with the chancellor that this proof was deficient. As far as an actual agreement is concerned, the only testimony that touched upon such contention was that of Carl L. Smith, who, some years ago, owned the Mahaffey property. Smith testified that his mother had made an agreement as to the property line, but it developed on cross-examination that he had no knowledge of this himself, including no knowledge of the name of the person his mother made the agreement with, but he did say that he understood "it was with the person, whom my mother bought the property from". Of course, this would mean nothing unless that person also owned the adjoining property on the west. At any rate, the matter was hearsay as far as the witness was concerned. He stated that he had claimed up to a certain tree that was mentioned in the testimony, but Smith did not own the property for more than a year or two, and, for that matter, it appears that any "claiming" had simply been in his mind; that is, there was no dispute with neighbors, nor any evidence that the owners of the Finney-Harper lot recognized any such line. Other witnesses, referring to "a line of trees", "a tree", and an "old wooden fence" testified, but we agree with the chancellor that none of this testimony was definite enough to fix any line and show that it had been acquiesced in, or observed, by the property owners. Accordingly, we see no need to detail this evidence. Of course, if landowners, through ignorance, rather than by agreement, recognize an erroneous common boundary, possession must then be adverse and must continue for the statutory period of seven years in order to ripen into title; *Barham* v. *Gattuso*, 216 Ark. 690, 227 S. W. 2d 151.

Seven witnesses testified in this litigation, and it appears that the chancellor paid close attention to their testimony and the exhibits; in fact, he rendered a rather comprehensive opinion relative to the contentions of the parties. As stated in *Mason* v. *Peck*, 239 Ark. 208, 388 S. W. 2d 84:

"The location of a boundary line is to be determined by a preponderance of the evidence. *Buffalo Zinc & Copper*

*Co.* v. *McCarty*, 125 Ark. 582, 189 S. W. 355. It is well settled that on appeal we do not disturb the find[ing]s of the chancellor unless against the preponderance of the evidence."

Certainly, we are unable to say that the chancellor's findings were against the preponderance of the testimony.

Affirmed.